Argued and submitted July 1, 1998, affirmed September 15, 1999

Harley C. ROBERTS, Jr.,
successor trustee of the C.A. Dillinger Marital Trust
and C.A. Dillinger Residual Trust,
*Appellant,*

*v.*

Ross A. FEAREY,
*Respondent,*
*and*

Hiliary H. TURNER,
*Defendant.*

(9612-09796; CA A99747)

986 P2d 690

Kevin O'Connell argued the cause for appellant. With him on the briefs was Kevin O'Connell, P.C.

Jonathan M. Radmacher argued the cause for respondent. With him on the brief was McEwen, Gisvold, Rankin, Carter & Streinz, LLP.

Before DeMuniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

**LINDER, J.**

The issue before us is whether a trustee's attorney can be liable to the beneficiaries of the trust for legal malpractice. Plaintiff appeals from summary judgment entered in defendant's favor and argues that the trial court should have applied the general foreseeability test for negligence and should not have taken a "policy approach" to declining to recognize a basis for malpractice liability under the circumstances of this case. We hold that defendant did not owe a duty to protect the beneficiaries from their economic losses and therefore is not liable as a matter of law. Accordingly, we affirm.

On review of summary judgment, we state the evidence in the light most favorable to plaintiff, as the nonmoving party. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Hiliary Turner, the trustee of the Dillinger Trusts, hired defendant Ross Fearey to act as his attorney in the administration of two trusts. While serving as trustee, Turner used trust funds for several questionable loans to Keerin, Inc., a corporation of which Turner was a shareholder. The notes were not repaid, resulting in a substantial depletion of the trust corpora. The probate court removed Turner as trustee, initiated surcharge proceedings against him, and appointed plaintiff Harley Roberts as successor trustee for both trusts. Plaintiff then brought this malpractice action against defendant on behalf of the trusts and the beneficiaries.[1] Plaintiff alleged that defendant was aware of Turner's loan transactions and failed to investigate the loans, to take action to stop Turner from breaching his fiduciary obligations, and to disclose Turner's conduct to the beneficiaries.

The parties' dispute centers on the applicable test for determining to whom an attorney is liable for malpractice. Plaintiff argues that a "special relationship" exists between a trustee's attorney and the beneficiaries because a trustee's attorney owes a duty of care to the trustee and because the

---

[1] Plaintiff also brought an action against Turner for breach of fiduciary duty. That claim was dismissed on Turner's motion because the surcharge action was still pending before the probate court.

trustee owes a heightened duty to the beneficiaries. Alternatively, plaintiff argues that defendant's liability should be determined under general foreseeability principles. *See generally Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). In response, defendant contends that one cannot be liable for negligently causing a purely economic loss to another, unless the negligent actor has a special relationship with the injured party. *See Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992). Defendant relies on *Currey v. Butcher*, 37 Or 380, 61 P 631 (1900), and its progeny for the proposition that an attorney owes a duty only to those with whom he or she is in "privity." Defendant asserts that, because he did not maintain an attorney-client relationship with either the trusts or the beneficiaries, he did not have a special relationship with them and therefore owed no duty to protect them from economic losses.

■■ We begin by outlining the development of Oregon negligence law and its application to legal malpractice. Oregon courts have rejected the traditional proximate cause and duty approaches to determining the scope of liability in negligence actions. *See generally Fazzolari*, 303 Or at 4-8, 11-17 (discussing the rise and fall of "proximate cause" and "no duty" analyses). Ordinarily, a general duty of care is presumed, and the analysis examines only whether a defendant's conduct "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *See Fazzolari*, 303 Or at 17. "Duty" ordinarily becomes an issue only when "the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty[.]" *Id.*

■ Duty also becomes an issue, however, when the plaintiff pleads damages based on purely economic losses. Oregon adheres to the traditional rule that "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property," on the theory that people generally do not have a duty to protect others from such losses. *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987). As a consequence, to recover purely economic losses, a plaintiff must plead some source of duty outside of the common law of negligence. *Id.* Such a duty arises only in

attorney-client, architect-client, agent-principal, and similar relationships where the professional owes a duty of care to further the economic interests of the "client." *Onita,* 315 Or at 159-61. In *Hale*, decided after *Fazzolari*, the court reiterated that a particular source for the duty to protect from economic losses is required even if economic losses are a foreseeable consequence of a defendant's conduct. *See Hale,* 304 Or at 284; *Onita,* 315 Or at 165-66 n 13 (noting that *Fazzolari* does not dictate a different result from that required under *Hale*); *Allstate Ins. Co. v. Tenant Screening Services, Inc.*, 140 Or App 41, 47-50, 914 P2d 16 (1996) (discussing the distinction between *Onita* and *Fazzolari*). Thus, a plaintiff must first show the *existence* of a special relationship in which the defendant had some obligation to pursue the plaintiff's economic interests. *Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996). Only then does *Fazzolari's* foreseeability analysis come into play.

 That approach, translated into the legal malpractice arena, accords with the general rule that an attorney can be liable for malpractice only to those with whom he or she is in privity. Said conversely, an attorney ordinarily is not liable to those outside of the attorney-client relationship because there is no obligation to protect anyone outside of the attorney-client relationship from economic losses. *See Currey,* 37 Or at 385 (stating the general "privity" rule); *Lee v. Nash*, 65 Or App 538, 543, 671 P2d 703 (1983), *rev den* 296 Or 253 (1984) (reiterating same); *Hale,* 304 Or at 284 (outlining the development of both the *Currey* rule and the "economic losses" rule). The rationale is pragmatic: the indirect economic consequence of an attorney's conduct are too far-reaching and indefinite. *See generally* 4 Harper, James and Gray, *The Law of Torts* § 25.18A, 622-23 (2d ed 1986).

Here, the trial court declined to apply traditional negligence analysis (*i.e.*, foreseeability) and instead concluded that a successor trustee should not be allowed to sue a former trustee's attorney for negligence, "even in a situation where the interests of the trustee and beneficiaries are not in conflict." The trial court explained that "allowing any such right of action will greatly impair the ability of any attorney for any trustee to give the attorney's trustee-client the kind of independent legal advice that the profession must be able to

provide in such situations." In so doing, the trial court antic-ipated that Oregon appellate courts, if presented with the issue, would adopt a "policy approach" similar to the multi-factor test used in *Trask v. Butler*, 123 Wash 2d 835, 872 P2d 1080 (1994).[2]

Although some states have adopted formal, policy-based balancing tests, Oregon courts have thus far declined to adopt a particular test for determining when a case should be taken out of the general privity rule. In *Metzker v. Slocum*, 272 Or 313, 316-17, 537 P2d 74 (1975), the Supreme Court reviewed balancing tests used in other jurisdictions but nei-ther adopted nor rejected them. Instead, the court resolved that case on the basis that the plaintiff's injury was "too ten-uous to fit into the pattern of adjudicated cases which allow third parties to bring an action despite lack of privity" and observed that "a much more certain, direct, and foreseeable connection between the lawyer's negligence and the third party's injury" would have to exist before it would be inclined to relax the privity requirement in a later case. *Metzker*, 272 Or at 317; see also *Lee*, 65 Or App at 545 (distinguishing *Metzker* by concluding that the connection between the defendant's breach and injury was "sufficiently certain, direct and foreseeable").

Oregon courts have instead extended the attorney's duty to third parties on a case-by-case basis and have found a "duty" to nonclients in only three cases: (1) in *Lee*, 65 Or App at 545, where the attorney purported to act as the plaintiff's

---

[2] In *Trask*, the Washington Supreme Court adopted a "modified" multi-factor balancing test for determining whether an attorney owes a duty of care to a non-client. The court determines first whether there is an "intent to benefit" the plain-tiff, considering the following:

"(1) the extent to which the transaction was intended to benefit the plaintiff;

"(2) the foreseeability of harm to the plaintiff;

"(3) the degree of certainty that the plaintiff suffered injury;

"(4) the closeness of the connection between the defendant's conduct and the injury;

"(5) the policy of preventing future harm; and

"(6) the extent to which the profession would be unduly burdened by a finding of liability."

123 Wash 2d at 843, 872 P2d at 1084.

attorney by filing a motion on behalf of the plaintiff; (2) in *Hale*, 304 Or at 286-87, where the plaintiff was the "intended" third-party beneficiary of the attorney's relationship with a client; and (3) in *McEvoy v. Helickson*, 277 Or 781, 785-87, 562 P2d 540 (1977), where the attorney stipulated to perform a service for the opposing party. Although Oregon has not formally adopted a discrete test, the cases in this area focus on whether there is a *de facto* relationship between the defendant and the injured nonclient of a nature that justifies imposing a special duty on the defendant to protect the nonclient against economic losses.

With that backdrop, we turn to the case before us. Plaintiff brought this action on behalf of the trusts and the trust beneficiaries. The threshold question here is: Is there an attorney-client relationship between defendant and the trusts or defendant and the trust beneficiaries? If the answer to the first question is no, then we ask: Are there other circumstances that indicate the existence of a special (or *de facto*) relationship that justifies imposing a duty on defendant to pursue the economic interests of the trusts or the trust beneficiaries?

█ In the context of an attorney's ethical obligations, the Oregon State Bar has taken the stance that an attorney retained by a fiduciary represents only the fiduciary. OSB Legal Ethics Op No 1991-119 (attorney represents trustee, not beneficiaries) and No 1991-62 (although personal representative owes fiduciary duty to estate and beneficiaries, attorney for personal representative is the personal representative's attorney only). That view accords with the weight of authority in other jurisdictions. *See, e.g., Goldberg v. Frye*, 217 Cal App 3d 1258, 1268, 266 Cal Rptr 483, 488 (1990) (attorney for administrator of estate represents the administrator, not estate); *Hopkins v. Akins*, 637 A2d 424, 428 n 10 (DC App 1993) (the same rule applies even if the estate pays attorney fees); *Ferguson v. Cramer*, 349 Md 760, 709 A2d 1279, 1284 (1998) (same); *Thompson v. Vinson & Elkins*, 859 SW2d 617, 623 (Tex App 1993) (neither trust nor estate is a legal entity and neither can be represented by counsel); Mallen and Smith, *Legal Malpractice* § 31.4, 85-88 (4th ed 1996) (using cases involving will fiduciaries to illustrate that

the same rule applies to a trust fiduciary). It also aligns with the Oregon Supreme Court's view on the ethical responsibilities of an attorney to his or her fiduciary. *See In re Phelps*, 306 Or 508, 517, 760 P2d 1331 (1988) (recognizing that the personal representative is the attorney's client, when applying the ethical rule governing misappropriation of "client" funds); *see also* ORS 128.009(3)(x) (granting a trustee the power to employ an attorney "to advise or assist the trustee in the performance of administrative duties").[3] We agree with the Bar's position and find the rationale persuasive. Accordingly, we hold that, when an attorney undertakes to represent a fiduciary, he or she represents only the fiduciary and does not, at the same time, maintain an attorney-client relationship with those to whom the fiduciary-client owes a duty.

We therefore turn to the second question—whether the trustee's attorney nonetheless owes a duty to pursue the economic interests of the trusts and trust beneficiaries. We note first that this case is not like any of the other cases in which we have found sufficient circumstances to overlook the privity requirement. This is not a case, as in *Lee*, where the attorney blurred the lines of representation by acting on behalf of the trusts or the beneficiaries. Defendant here adamantly denies ever having agreed to represent or having purported to represent the trusts or beneficiaries, and plaintiff

---

[3] Plaintiff urges us to adopt the rationale of *Moeller v. Superior Court (Sanwa Bank)*, 16 Cal 4th 1124, 69 Cal Rptr 2d 317, 947 P2d 279 (1997), in which the California Supreme Court construed a statute similar to ORS 128.009(3)(x), which grants the trustee the power to employ an attorney "to advise or assist the trustee." In *Moeller*, the court held that, with respect to confidential communications made regarding matters of the trust's administration, the attorney-client privilege passes from a predecessor trustee to a successor trustee. 947 P2d at 285. *Moeller*, however, addressed the parties' relationships for purposes of the evidence code, not for purposes of malpractice liability. It is therefore not on point. In any event, for reasons we identify in this opinion, we disagree with the California court's decision to the extent it could be understood to require the same analysis for purposes of malpractice liability.

We have found only one case holding that an attorney hired by the trustee represents the estate and not the trustee. *See Steinway v. Bolden*, 185 Mich App 234, 460 NW2d 306 (1990). That decision, however, was based on a Michigan probate code provision that authorizes personal representatives to employ counsel for service on "behalf of the estate." That provision created an attorney-client relationship with the "estate." ORS 128.009(3)(x) is not similarly phrased. *Steinway*, therefore, is significantly distinguishable.

does not contend otherwise. Nor does plaintiff argue liability on an intended third-party beneficiary theory.[4]

Plaintiff asserts instead that an attorney's duty to the trustee should "extend" to the trusts and the trust beneficiaries due to the trustee's heightened duty as a fiduciary. Plaintiff emphasizes that, in the trustee-beneficiary relationship, the interests are closely aligned—*i.e.*, the trustee and the beneficiaries have the common goal of protecting the beneficiaries' economic interests. In other words, according to plaintiff, because defendant owed a duty to Turner, who owed a duty to the trusts and its beneficiaries, defendant as a matter of law also owes a duty to the trusts and its beneficiaries.

■ We decline to extend liability that far, as a *per se* rule. To be sure, the trustee's attorney will advise the trustee to make decisions that have the effect of benefitting the trusts and, more indirectly, the beneficiaries' economic interests. Under the special relationship rule announced in *Onita*, the trustee's attorney may be, in that sense, acting "at least in part" to further the economic interests of the trusts and the beneficiaries. *See Ammons v. Jackson County*, 119 Or App 181, 184, 850 P2d 376, *rev den* 318 Or 24 (1993) (discussing that, in those relationships giving rise to a duty of care to protect against economic losses, a common thread is that the professional is acting "at least in part" to further the economic interests of another). That consideration factors into whether we will recognize a special relationship, but it does not establish the existence of one as a matter of law.

---

[4] In his answer to the complaint, defendant admits that he also represented the settlor prior to his death. In a proper case, liability to third parties conceivably might arise based on the settlor's privity with an attorney—*e.g.*, a plaintiff might be able to argue successfully that the trust beneficiaries were intended by the settlor to be third-party beneficiaries of the attorney-client relationship between the attorney and the settlor. *See Hale*, 304 Or at 284-87 (allowing third-party beneficiary claim against testator's attorney). Here, however, the complaint does not allege that either the trusts or the beneficiaries were intended third-party beneficiaries of the agreement between defendant and Turner. In fact, defendant concedes that neither the trusts nor the beneficiaries are third-party beneficiaries in the contractual sense. Moreover, the record is silent as to the scope and purpose of the representation, and neither party treats it as significant to our analysis.

To hold that an attorney's duty of care runs not only to the fiduciary-client, but also to those to whom the fiduciary's duties run, would be particularly problematic in this context. A trustee's attorney is charged with the task of advising the trustee on issues ranging from the trustee's fiduciary obligations to how to manage conflicts in the beneficiaries' personal objectives. The attorney cannot simultaneously advise the trustee and serve the economic interests of each beneficiary without risking conflicts of interest. *See Spinner v. Nutt*, 417 Mass 549, 553-54, 631 NE2d 542, 545 (1994) (no duty to beneficiaries; recognizing "potential for conflict"); *Ferguson*, 709 A2d at 1284 (same; duty owed *solely* to personal representative as attorney's client); *Goldberger v. Kaplan, Strangis and Kaplan*, 534 NW2d 734, 739 (Minn App 1995) (same); *Hopkins*, 637 A2d at 428 (same; discussing potential adversarial relationship between executor and beneficiary). That risk is greatest where, as here, the trustee has been removed. When a trustee is removed or resigns, the former trustee may have claims against the trust—*e.g.*, reimbursement of attorney fees—while the trust or its beneficiaries also may have claims against the former trustee—*e.g.*, for breach of fiduciary duty or for a surcharge. In that situation, the attorney cannot continue to pursue the economic interests of both. *See In re Morris*, 326 Or 493, 503-04, 953 P2d 387 (1998) (continuing to represent former personal representative after agreeing to represent successor created a current client conflict of interest where attorney pursued former personal representative's claim against the estate for attorney fees). Thus, to adopt plaintiff's position would likely paint the trustee's attorney into a corner of conflicts.

We recognize that, in many cases, the *potential* for conflict may never become an *actual* conflict. We decline, however, to view the attorney's duty through an after-the-fact lens. We agree with the trial court's conclusion that extending the attorney's duties beyond the trustee will interfere with the attorney's ability to use his or her independent judgment in advising the trustee. *See* Mallen and Smith, *Legal Malpractice* § 31.4 at 85. Thus, the *potential* for adversarial relationships, not just adversarial relationships in fact, must weigh into the calculus in determining whether a duty

exists to those outside of the attorney-client relationship. For those reasons, we are not persuaded by the contrary authority[5] and note that the weight of authority appears to be in accord with our view. *Id.*

Our conclusion does not necessarily foreclose redress for a trust or its beneficiaries. Instead, the emphasis remains where it more properly belongs: upon the *trustee's* judgments, choices, and actions. *See Trask,* 123 Wash 2d at 843-44, 872 P2d at 1085. Successor trustees may still sue their breaching predecessors, and if the breaching trustees received inadequate legal services, they in turn may sue their attorneys for malpractice. *See id.* (noting the same in the context of personal representatives). Also, if the trustee's attorney knowingly aids or assists the trustee in commission of the breach of fiduciary duty, then the successor trustee may also bring a claim for vicarious liability against the former trustee's attorney. *Granewich v. Harding,* 329 Or 47, 56 n 5, 985 P2d 788 (1999); *see also* OSB Legal Ethics Op No 1991-119 (attorneys may not ethically assist fiduciary in any wrongdoing); ORS 128.031 (third party not liable for assisting a trustee unless the third party knowingly participates in the breach of the trustee's fiduciary duty).

Here, plaintiff alleged only passive conduct—namely, that defendant was aware of Turner's loans and failed to advise him against making the loans. That allegation does not state a claim for aiding another in the breach of a fiduciary duty. Nor does it demonstrate sufficient circumstances to take this case out of the privity requirement. We therefore conclude that defendant owed no duty to protect the trusts or the beneficiaries from economic losses.

---

[5] For contrary authority, *see, e.g., Morales v. Field,* 99 Cal App 3d 307, 316, 160 Cal Rptr 239, 244 (1979) (trustee's attorney owes duty to beneficiary and "assumes a relationship with the beneficiary akin to that between trustee and beneficiary"); *Charleson v. Hardesty,* 108 Nev 878, 839 P2d 1303 (1992) (adopting the reasoning in *Morales*); *but see Goldberg,* 217 Cal App 3d at 1268-69, 266 Cal Rptr at 489 (a later California case concluding, without citation to *Morales*, that the estate's beneficiaries are only incidental beneficiaries of the attorney-administrator relationship). In *Morales*, the attorneys for the trustee and executor blurred the attorney-client relationships by telling the beneficiary that she need not take any action on her part, promising to keep her advised should anything unusual arise, and reassuring her that her interests would be protected. 99 Cal App 3d at 311-12, 160 Cal Rptr at 241. Thus, *Morales* was a privity-like situation similar to *Lee* and is, for that reason, distinguishable.

Because we conclude that no duty of care *existed* under these circumstances, we have no occasion to examine whether the harm was generally foreseeable. "Foreseeability alone is not a sufficient basis to permit the recovery of economic losses on a theory of negligence." *Onita*, 315 Or at 165.

Affirmed.