[No. A129586. First Dist., Div. Four. Oct. 18, 2011.]

DANIEL C. SMITH, as Personal Representative, etc., Plaintiff and Appellant, v.
JERRY K. CIMMET et al., Defendants and Respondents.

1384

## COUNSEL

Waltz Law Firm, Patrick J. Waltz and Elisa W. Ungerman for Plaintiff and Appellant.

Klinedinst, Heather L. Rosing, David M. Majchrzak; Long & Levit, Joseph P. McMonigle, Jessica R. MacGregor and Helen M. McFarland for Defendants and Respondents.

## OPINION

**SEPULVEDA, J.**—The personal representative of an Oregon estate brought a legal malpractice action against California attorneys who had been retained by the previous representative in an unsuccessful lawsuit against the decedent's California business partner. The current estate representative alleged that his predecessor's attorneys prosecuted a meritless lawsuit that unnecessarily expended estate assets. The attorney defendants moved for judgment on the pleadings contending that the Oregon representative lacked capacity to sue because his authority did not extend beyond Oregon, and lacked standing to sue because plaintiff representative was never a client of the attorneys. (Code Civ. Proc., § 438.) The trial court granted the motion on the second ground. The court held that Oregon law controls the rights of an Oregon estate representative and, under Oregon case law, a successor representative has no standing to prosecute a legal malpractice claim against attorneys retained to represent the predecessor representative.

The estate representative appeals and argues that he has standing under both California and Oregon law. Defendants dispute that argument, and renew their challenge to the representative's capacity to sue. We conclude that the Oregon representative lacks capacity to sue in California because his authority "does not extend beyond the jurisdiction of the government under which that person was invested with authority"—Oregon. (Code Civ. Proc., § 1913,

subd. (b).) However, the Oregon representative may be able to obtain ancillary appointment by a California court that vests him with the capacity to sue, and must be given an opportunity to do so. (Prob. Code, § 12510 et seq.) We also conclude that, under both California and Oregon statutory law, the representative has standing to sue attorneys who were retained by his predecessor to act on the estate's behalf. (Prob. Code, §§ 8524, subd. (c), 9820, subd. (a); Or. Rev. Stat. §§ 113.215(4), 114.305(19).) Moreover, even if Oregon law differed from California law on this point, California law should be applied given this state's strong interest in regulating attorneys licensed and practicing here. We reverse the judgment.

## I. FACTS[1]

The decedent, William Hinkley Adam Smith (decedent), had lived in California for many years but moved to Oregon around 2000. In 2001, he and his wife, Genevieve Smith, retained California attorney Jerry K. Cimmet to represent them in the investigation of William Smith's business partnership with Charles McPherson in order to determine whether the couple had any claims against McPherson. McPherson managed investments held in partnership with William Smith. In 2003, following the attorney's investigation, decedent and his wife authorized Attorney Cimmet to negotiate with McPherson for settlement of their claims. The business dispute did not settle.

Decedent died in Oregon on April 12, 2004, at the age of 91. He was survived by his wife, Genevieve Smith, and two adopted children from an earlier marriage, a daughter and a son, Daniel C. Smith. An Oregon court appointed Genevieve Smith personal representative of decedent's estate (the Estate).

In May 2004, Genevieve Smith, individually and as representative of the Estate, signed a new agreement with Attorney Cimmet authorizing him to file a lawsuit against McPherson. Attorney Cimmet joined with another California attorney, Matthew Pavone, and filed a lawsuit in Marin County Superior Court (the Marin Action).

In August 2004, decedent's children filed a petition in Oregon contesting the will as the product of the wife's undue influence, demanding her removal as personal representative of the Estate. The contested will left decedent's entire Estate to his wife, Genevieve Smith, and disinherited his children. In addition to contesting the will in probate court, decedent's children also sued the wife civilly for interference with their inheritance.

---

[1] Our statement of facts is based upon the pleadings and matters judicially noticed. (Code Civ. Proc., § 438, subd. (d).) Respondents' unopposed request to take judicial notice of Oregon case law and court records is granted. (Evid. Code, § 452, subds. (a) & (d).)

Meanwhile, in California, a defense summary judgment was entered in the Marin Action filed by Genevieve Smith against McPherson. Judgment was filed in June 2006. Genevieve Smith authorized Attorneys Cimmet and Pavone to appeal the judgment.

While the California appeal was pending, Genevieve Smith lost the Oregon civil and probate actions filed against her. In August 2006, a jury in the civil lawsuit found that Genevieve Smith had interfered with the prospective inheritance of her husband's children, and assessed damages of $1.5 million. In February 2007, a probate judge held invalid decedent's will leaving his entire Estate to his wife and disinheriting his children. The court found the contested will to be the product of the wife's undue influence. The court admitted for probate an earlier will that provided generously for the wife but that made decedent's children the residual beneficiaries. The court removed Genevieve Smith as personal representative of the Estate because of the undue influence she had exerted over the decedent, and because there were conflicts of interest and animosity between her and the residual beneficiaries. The court appointed a new personal representative, who himself was soon replaced by decedent's son, Daniel Smith, in March 2007.

In June 2007, Attorneys Cimmet and Pavone withdrew as counsel of record for Genevieve Smith in the pending appeal of the Marin Action. The appeal was abandoned in August 2007 after Daniel Smith refused to fund the appeal or to substitute into the Marin Action as the new representative of the Estate. McPherson, as the prevailing party in the Marin Action, was awarded attorney fees and costs against the Estate in an amount "somewhere between $600,000 to $700,000," it is alleged. It is also alleged that about $1.5 million was paid to the attorneys representing Genevieve Smith on behalf of the Estate in the Marin Action.

In April 2008, Daniel Smith, in his capacity as the new personal representative of the Estate, filed this lawsuit against Attorneys Cimmet and Pavone.[2] Daniel Smith resides in California. The case was venued in San Mateo County, California, where defendants practice law and presumably reside. Plaintiff Daniel Smith states three causes of action: legal malpractice, breach of contract, and breach of fiduciary duty. In support of all causes of action, plaintiff alleges that Attorneys Cimmet and Pavone represented to decedent and his wife, Genevieve Smith, "that the legal services provided were necessary and appropriate when, in fact, most, if not all, were not and that the claims asserted by [decedent and his wife] relative to McPherson were, upon reasonable investigation, without merit and known to be without merit by defendants" Cimmet and Pavone. Plaintiff also alleges that defendant attorneys "abused their confidential relationship with [decedent and his wife] by

---

[2] Two other attorneys were sued but were dismissed following separate settlements.

causing them to believe that the claims asserted relative to McPherson including those which were advanced in the Marin Action on behalf of the Estate were meritorious and that the legal services provided by defendants were both necessary and appropriate when they were not."

Defendant attorneys filed a motion for judgment on the pleadings in April 2010, seeking judgment in their favor as to the entire complaint. (Code Civ. Proc., § 438.) Defendants asserted that plaintiff (1) lacked capacity to sue because his authority as a personal representative of a probate estate did not extend beyond the jurisdiction that appointed him (Or.) and (2) lacked standing to sue because no attorney-client relationship existed between the attorneys and plaintiff—the relationship was with the prior Estate representative. Plaintiff opposed the motion, arguing that he had both capacity and standing to sue. The trial court granted the motion on the second ground. Judgment in defendants' favor was entered in August 2010, and plaintiff filed a timely notice of appeal in September 2010.

## II. DISCUSSION

██ A party initiating a lawsuit must have both capacity to sue (the right to come into court) and standing to sue (the right to state a cause of action seeking particular relief). (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604 [52 Cal.Rptr.2d 443].) Incapacity is " 'a legal disability, such as infancy or insanity, which deprives a party of the right to come into court.' " (*Ibid.*) A challenge to a party's capacity must be brought at the earliest opportunity or the challenge is forfeited. (*Ibid.*; *Farmers & Merchants Trust Co. v. Madeira* (1968) 261 Cal.App.2d 503, 513–514 [68 Cal.Rptr. 184].) In contrast, standing " 'goes to the existence of a cause of action' " and may be raised at any time. (*Color-Vue, Inc., supra,* at p. 1604.)

Defendants here raised early objections to both plaintiff's capacity to sue and standing to sue. Defendants argue that the Oregon representative lacks capacity to sue because his authority does not extend beyond Oregon, and lacks standing to sue because plaintiff representative was never a client of the attorneys. We discuss each point in turn.

### A. *A foreign estate representative's capacity to sue*

██ " 'A probate or trust estate is not a legal entity; it is simply a collection of assets and liabilities. As such, it has no capacity to sue or be sued, or to defend an action. Any litigation must be maintained by, or against,

the executor [or personal representative] of the estate.' "[3] (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1344 [7 Cal.Rptr.3d 178].) It is the personal representative of a probate estate that may "[c]ommence and maintain actions and proceedings for the benefit of the estate." (Prob. Code, § 9820, subd. (a).)

The capacity of a personal representative, however, is limited. Under the common law, a personal representative generally cannot sue in his or her representative capacity outside the state of appointment. (*Vaughan v. Northup* (1841) 40 U.S. 1, 5–6 [10 L.Ed. 639].) Justice Story of the United States Supreme Court explained the doctrine: "Every grant of administration is strictly confined in its authority and operation to the limits of the territory of the government which grants it; and does not, de jure, extend to other countries [or states]. It cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity, which every nation [or state] is at liberty to yield or to withhold, according to its own policy and pleasure, with reference to its own institutions and the interests of its own citizens." (*Id.* at p. 5.)

■ Some states have abandoned the common law rule and permit estate representatives appointed by any sister state to commence litigation in their courts. (E.g., N.Y. Estates, Powers & Trusts Law, § 13-3.5 (McKinney 1967).) California is not one of them. California has always followed the common law in holding that "an executor or administrator, as such, has no power which he can employ extraterritorially." (*Lewis v. Adams* (1886) 70 Cal. 403, 411 [11 P. 833], italics omitted.) California gives effect to sister state judicial acts in other matters but expressly provides by statute that "[t]he authority of a guardian, conservator . . . or of a personal representative, does not extend beyond the jurisdiction of the government under which that person was invested with authority, except to the extent expressly authorized by statute." (Code Civ. Proc., § 1913, subd. (b); accord, *Estate of Rawitzer* (1917) 175 Cal. 585, 586–587 [166 P. 581].)

■ As a general practice, a foreign representative who wants to sue, collect claims, or otherwise exercise authority over a decedent's property situated in California petitions a California court for ancillary probate administration. (Prob. Code, § 12500 et seq.; Ross & Grant, Cal. Practice Guide: Probate, *supra*, ¶ 14:290 et seq.) The California court then appoints a local

---

[3] There are several terms for estate representatives: executor (designated in a will and appointed by the court); administrator (appointed by the court without decedent's designation); and personal representative (sometimes a synonym for administrator but often a generic term encompassing executors). (Prob. Code, §§ 8420, 8421, 8440, 8460, subd. (a); Ross & Grant, Cal. Practice Guide: Probate (The Rutter Group 1986) ¶¶ 3:326–3:330.) The distinction is not material here. We use the term personal representative to encompass all types of estate representatives.

personal representative (commonly, the same person appointed by the sister state) who is then vested with authority to marshal California assets. (Prob. Code, §§ 12504, 12513.) The benefit of a local personal representative, from California's perspective, is protection of the rights of California creditors who might otherwise lose access to California assets were a foreign representative permitted to remove property from California without California court oversight. It has thus been said that "[o]ne of the dominant purposes of an ancillary administration is the collection and conservation of a decedent's domestic assets for the benefit of local creditors." (*Estate of Glassford* (1952) 114 Cal.App.2d 181, 189 [249 P.2d 908].) The rule barring foreign representatives from exercising authority outside their state of appointment protects the rights of domestic creditors. (*Canfield v. Scripps* (1936) 15 Cal.App.2d 642, 647–648 [59 P.2d 1040]; Rest.2d Conf. of Laws (1971) § 354, com. a, p. 414.)

California recognizes limited exceptions to the rule barring foreign representatives from exercising authority here on behalf of a nondomiciliary decedent without a local personal representative. The Probate Code, for example, provides a summary procedure for a foreign representative's collection of a small estate's personal property where the amount of the California property does not exceed $100,000. (Prob. Code, §§ 12570–12573, 13100 et seq.) There is also a distinction made between a foreign representative acting in that capacity on behalf of the decedent (which is generally barred) and a foreign representative acting in another capacity such as trustee, judgment creditor, or intermediary for the decedent's survivors in a wrongful death action (which is generally permitted). (*Estate of Rawitzer, supra*, 175 Cal. at pp. 586–587 [foreign representative cannot sue as estate representative but may sue as trustee]; *Farmers & Merchants Trust Co. v. Madeira, supra*, 261 Cal.App.2d at pp. 513–514 [foreign representative may sue to recover on judgment]; *Wallan v. Rankin* (9th Cir. 1949) 173 F.2d 488, 493 [foreign representative may bring wrongful death action in Cal. federal court under sister state statute as intermediary for decedent's widow and children].)

Plaintiff Daniel Smith, the representative in this case, avers that he is suing in his representative capacity to recover monetary damages for the Estate. He is clearly suing in his capacity as a foreign estate representative and, as such, plaintiff has failed to identify any California statute providing an exception to the general rule barring foreign representatives from suing here in their representative capacity.

As we noted above, California law provides that "[t]he authority of a . . . personal representative . . . does not extend beyond the jurisdiction of the government under which that person was invested with authority, except to the extent expressly authorized by statute." (Code Civ. Proc., § 1913,

subd. (b).) Plaintiff argues that his authority to prosecute this lawsuit in California is expressly authorized by statute, and cites an *Oregon* statute that allows a representative to prosecute actions in any jurisdiction for the protection of the estate. (Or. Rev. Stat. § 114.305(19).) In the trial court, defendants disputed whether this action qualified as one brought for the protection of the Estate. The more fundamental point, however, is that it is California's statutes, not Oregon's, that must provide authority for a foreign representative's suit in California.

■ As the Restatement of the Law recognizes, a foreign representative "may maintain an action to enforce a claim belonging to the decedent" under specified circumstances and "when otherwise authorized by the *local law of the forum*." (Rest.2d. Conf. of Laws, *supra*, § 354, italics added; accord, Fed. Rules Civ. Proc., rule 17(b)(3), 28 U.S.C. [capacity to sue for those acting in a representative capacity is determined by the law of the state where the court is located].) The local law of the forum—not the law of the appointing jurisdiction—determines the extent to which the forum will recognize the authority of a foreign representative. A foreign jurisdiction like Oregon "cannot confer, as a matter of right, any authority to collect assets of the deceased in any other state; and whatever operation is allowed to it beyond the original territory of the grant is a mere matter of comity" exercised by the forum state. (*Vaughan v. Northup, supra*, 40 U.S. at p. 5.) Oregon's statute cannot, as a matter of right, confer any authority upon its representatives to prosecute actions in California.

■ Nor do we see any basis for applying, as a matter of comity, the Oregon statute's broad grant of authority allowing representatives to prosecute lawsuits in any jurisdiction. It has long been recognized that "Code of Civil Procedure section 1913 is anything but an expression of a legislative desire to extend authority by comity to foreign representatives." (*Mayer v. Willing* (1961) 196 Cal.App.2d 379, 383 [16 Cal.Rptr. 476].) Such an extension of a foreign representative's authority would undermine California's system requiring ancillary administration in most matters.

Plaintiff has not identified a viable exception to the general rule barring estate representatives from acting extraterritorially. He has not, for example, made any effort to demonstrate that he should be permitted to maintain his action because it is in the best interest of the Estate and will not prejudice the interests of local creditors—which is a broad exception some commentators have endorsed. (Rest.2d. Conf. of Laws, *supra*, § 354; 14 Witkin, Summary of Cal. Law (10th ed. 2005) Wills and Probate, § 63, p. 125.)

■ In any event, that exception is usually reserved for situations where there is no other forum in which the foreign representative can bring the

claim and the foreign representative cannot obtain ancillary administration because there are no local assets to provide a basis for ancillary administration. (Rest.2d. Conf. of Laws, *supra*, § 354, com. e, pp. 414–415.) The first prerequisite may be met here, but not the second. California may be the only available forum because Oregon federal and state courts have generally declined to exert personal jurisdiction over out-of-state attorneys retained to perform out-of-state services for an Oregon resident. (*Bryant v. Weintraub, Genshlea, Hardy, Erich & Brown* (D.Or. 1994) 844 F.Supp. 640, 641–642; *State ex. rel. Liebovich v. Tiktin* (1995) 321 Ore. 569 [902 P.2d 91, 92].) But nothing in the record shows that plaintiff was precluded from obtaining ancillary administration in California. Under California law, a cause of action to recover monetary damages on behalf of an estate is a local asset that provides a basis for ancillary administration.

■ As noted earlier, an estate representative appointed by a sister state may commence an ancillary administration proceeding in California where the nondomiciliary decedent has property here. (Prob. Code, § 12510; Ross & Grant, Cal. Practice Guide: Probate, *supra*, ¶ 14:290 et seq.) Property includes intangibles, like a cause of action for monetary damages. (Civ. Code, § 953; *Estate of Waits* (1944) 23 Cal.2d 676, 678 [146 P.2d 5].) It follows that plaintiff may petition for ancillary administration in the county where the alleged debtors—defendants here—are domiciled. (*Estate of Glassford, supra,* 114 Cal.App.2d at p. 189; Ross & Grant, Cal. Practice Guide: Probate, *supra*, ¶ 14:290.) ■ Plaintiff failed to do so.

■ We conclude that the motion for judgment on the pleadings should be granted with leave to amend. In his opposition to the motion for judgment on the pleadings, plaintiff specifically requested leave to amend if the complaint were found deficient. At oral argument, plaintiff's counsel asked that he be permitted to petition for ancillary administration if the complaint were found deficient for lack of capacity. The complaint is deficient. Plaintiff does lack capacity to sue. Plaintiff should be given an opportunity to cure the deficiency by petitioning for ancillary administration and then amending the complaint to allege capacity to sue as the ancillary representative. "In the case of either a demurrer or a motion for judgment on the pleadings, leave to amend should be granted if there is any reasonable possibility that the plaintiff can state a good cause of action." (*Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1852 [19 Cal.Rptr.2d 671]; accord, *MacIsaac v. Pozzo* (1945) 26 Cal.2d 809, 815 [161 P.2d 449].)

In the trial court, defendants asserted that plaintiff Daniel Smith can never "become a representative of the Estate in California as he was/is engaged in an ongoing conflict with G[enevieve] Smith," an Estate beneficiary. At oral argument, defendants also criticized plaintiff's failure to seek ancillary administration earlier. These points are not dispositive. We cannot presume that

Daniel Smith, who was found qualified to serve as the Estate representative by an Oregon probate court, is necessarily disqualified from serving as an ancillary representative here. He should be given an opportunity to petition for ancillary appointment and ask that he, or another individual, be appointed representative of an ancillary estate. Defendants' concerns with plaintiff's qualifications as a representative may be raised at that time.

▉ Ancillary administration, of course, depends upon there being estate property in California, which, in this case, means a colorable cause of action. There is a colorable cause of action because, as we discuss next, a successor representative may sue attorneys retained by a prior representative for alleged malpractice in representing the interests of a probate estate.

B. *A successor estate representative's standing to sue his predecessor's attorneys*

▉ An estate representative may "[c]ommence and maintain actions and proceedings for the benefit of the estate" (Prob. Code, § 9820) and retain an attorney for that purpose. The estate representative is the attorney's client, not the estate itself (which is not a legal entity) nor any beneficiary of the estate. (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 528–530 [15 Cal.Rptr.3d 735, 93 P.3d 337] (*Borissoff*); *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267 [266 Cal.Rptr. 483]; Ross & Grant, Cal. Practice Guide: Probate, *supra*, ¶ 1:14; accord, *Roberts v. Fearey* (1999) 162 Ore.App. 546 [986 P.2d 690, 694] (*Roberts*).) ▉ It is a well-recognized principle that "an attorney will normally be held liable for malpractice only to the client with whom the attorney stands in privity of contract, and not to third parties." (*Borissoff, supra*, at p. 529.)

▉ The attorney defendants here were retained by the former estate representative, Genevieve Smith, and it is she who was their client, not plaintiff Daniel Smith who succeeded her as estate representative. The question thus becomes: May a successor representative assert a legal malpractice action against attorneys who were retained by a predecessor representative to prosecute litigation on behalf of the estate? The question is complicated by the presence of two states with potential interests in having their laws applied. In such situations, California applies a governmental interest analysis to examine potential conflict of law issues. (*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1202 [127 Cal.Rptr.3d 185, 254 P.3d 237].)

The courts "typically summarize governmental interest analysis as involving three steps: 'First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court

examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" [citation], and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied." ' " (*Sullivan v. Oracle Corp., supra*, 51 Cal.4th at p. 1202.) "[A] separate conflict of laws inquiry must be made with respect to each issue in the case . . . ." (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 920 [103 Cal.Rptr.2d 320, 15 P.3d 1071].)

The particular issue in question here is the standing of an estate representative to bring a malpractice action against his predecessor's attorneys. We conclude that the laws of California and Oregon are the same on this issue, and thus we may apply California law without offending any interest Oregon may have in the matter. Moreover, even if the two states differ on the relevant issue, there is no true conflict because California has a compelling interest in regulating California attorneys, and Oregon has none. Even if there were a true conflict in the laws of the two states, California's interest in regulating attorneys would be more impaired than would be any interest of Oregon, and thus California law is properly applied.

1. *The laws of California and Oregon are the same in providing that a successor representative has the powers and duties of his or her predecessor, including the power to sue for the benefit or protection of the estate*

In California, our statutes provide that a "successor personal representative has the powers and duties in respect to the continued administration that the former personal representative would have had" (Prob. Code, § 8524, subd. (c)), including the power to "[c]ommence and maintain actions and proceedings for the benefit of the estate" (Prob. Code, § 9820, subd. (a)). The California Supreme Court, reading these provisions together, concluded that "if the fiduciary who hired the attorney is replaced, the successor acquires the same powers the predecessor had in respect to trust [or estate] administration ([Prob. Code,] § 8524, subd. (c)), including the power to sue for malpractice." (*Borissoff, supra*, 33 Cal.4th at p. 530.) In *Borissoff*, the court permitted a successor representative of an estate to bring a malpractice action against the tax attorney who represented the previous representative in connection with the estate's tax matters. (*Id.* at pp. 528–530.) Our high court acknowledged the traditional rule, based on the absence of privity, that would generally preclude a successor from suing his predecessor's attorneys, but held that

"the absence of privity, viewed as an impediment to standing, is a gap the Legislature has filled" in California. (*Id.* at p. 530; see generally Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2010) ¶ 6:271.11, p. 6-60.2 (rev. # 1, 2010) ["as a matter of statute, a successor personal representative (albeit a nonclient) may bring suit against the predecessor's attorney for malpractice causing loss to the estate"].)

 Oregon's statutes are substantially the same. Oregon statutes provide that estate representatives may prosecute actions for the protection of the estate (Or. Rev. Stat. § 114.305(19)), and grant a successor representative "all the rights and powers of the predecessor" except for powers "given in the will which by its terms are personal to the personal representative named therein" (Or. Rev. Stat. § 113.215(4)). Reading theses statutes together, it follows that if the representative who hired the attorney is replaced, the successor acquires the same powers the predecessor had, including the power to sue for malpractice. "[T]he absence of privity, viewed as an impediment to standing, is a gap the Legislature has filled" in Oregon, just as it has in California. (*Borissoff, supra,* 33 Cal.4th at p. 530 [interpreting similar Cal. statutes].) Thus, there is no choice of law problem. "The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical." (*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].)

Defendants insist that the two states' laws are not identical, and that Oregon case law precludes this lawsuit. Defendants point to an Oregon case that refused to permit a successor trustee to sue his predecessor's attorney for malpractice. (*Roberts, supra,* 986 P.2d at pp. 692–696.) In *Roberts,* a successor trustee sued his predecessor's attorney upon allegations that the attorney had failed to investigate or stop the first trustee's misuse of trust funds, and had failed to disclose that trustee's misconduct to the beneficiaries. (*Id.* at pp. 691–692.) In denying the successor trustee's standing to sue on behalf of the trust and its beneficiaries, the Oregon intermediate appellate court reaffirmed "the general rule that an attorney can be liable for malpractice only to those with whom he or she is in privity." (*Id.* at p. 693.) The court made no distinction between the rights of the successor trustee and the rights of the trust beneficiaries to sue a former trustee, and none was advocated by the parties. (*Id.* at pp. 692–696; see *Borissoff, supra,* 33 Cal.4th at p. 534 [discussing *Roberts*].) Plaintiff suggests that the *Roberts* court unthinkingly equated the successor trustee's rights with those of the beneficiaries, and that an Oregon court properly focused on the nature of a successor trustee's duties would conclude, as have California courts, that a trustee (and similar fiduciaries) have rights that a beneficiary does not. (*Borissoff, supra,* at pp. 528–529; *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1131 [69 Cal.Rptr.2d 317, 947 P.2d 279].) Plaintiff may be correct but

we need not engage in that supposition to find that *Roberts* is not controlling here. *Roberts* is distinguishable because *Roberts* concerned the rights of a successor *trustee* and trust beneficiaries, not a successor estate *representative.* *Roberts* therefore had no occasion to consider Oregon's statute that expressly grants a successor representative "all the rights and powers of the predecessor." (Or. Rev. Stat. § 113.215(4).) We believe that an Oregon court would interpret that statute in accord with California's analogous statute (Prob. Code, § 8524, subd. (c)), and conclude that a successor representative acquires the same powers the predecessor had, including the power to sue for malpractice.

 Defendants concede that the Oregon statute granting a successor representative "all the rights and powers of the predecessor" (Or. Rev. Stat. § 113.215(4)) authorizes a successor representative "to carry on the same types of activities in the estate's interest" but argues that allowing a malpractice action by the successor effectively allows the successor "to inherit the same attorney-client relationships as his predecessor," which poses conflict of interest problems for the attorney. Defendants misconstrue the import of the Oregon statute. In granting a successor representative "all the rights and powers of the predecessor" (Or. Rev. Stat. § 113.215(4)), the statute does not imply privity of contract—or any relationship—between the successor representative and the former representative's attorney. The statute provides that, *despite the lack of privity*, the successor may exercise the power the predecessor had to commence litigation. This interpretation of the statute is consistent with Oregon law which, "on a case-by-case basis," determines "when a case should be taken out of the general privity rule." (*Roberts, supra,* 986 P.2d at p. 693.) A chief consideration in that determination is whether there exists "a special (or *de facto*) relationship that justifies imposing a duty" on the attorney. (*Id.* at p. 694.) Here, that special relationship is created by statute, which vests the successor representative with "all the rights and powers of the predecessor." (Or. Rev. Stat. § 113.215(4).)

This relaxation of the privity rule does not create a conflict of interest for the attorney. As the California Supreme court observed in interpreting an analogous statute (Prob. Code, § 8524, subd. (c)) in a successor estate representative's malpractice action against his predecessor's tax attorneys: "[t]o permit a successor fiduciary to sue an attorney hired by a predecessor to perform legal work for the benefit of the estate, when the attorney's negligent work has harmed the estate, creates no conflict of interest. With respect to matters of estate administration, the predecessor and successor fiduciaries' interests are identical: Both have the power and duty to obtain competent legal representation for the purpose of fairly reporting the estate's tax liability." (*Borissoff, supra,* 33 Cal.4th at p. 534.) The same is true with respect to the retention of attorneys in litigation brought on behalf of the estate to recover estate assets—the successor and predecessor representatives' interests are fully aligned. Although there are conflicts between Daniel Smith

and Genevieve Smith, those conflicts relate to their status as will beneficiaries, not as estate representatives suing McPherson. As successive estate representatives concerning the McPherson litigation, their interests are the same—obtaining competent legal representation to recover estate assets.

The situation of successive estate representatives is thus distinct from the situation in *Roberts, supra*, 986 P.2d at page 691. In *Roberts*, the Oregon court addressed whether a trustee's attorney can be held liable to the beneficiaries of a trust for legal malpractice, and worried about attorney conflicts of interest if liability were imposed because a trustee's attorney "cannot simultaneously advise the trustee and serve the economic interests of each beneficiary without risking conflicts of interest." (*Id.* at pp. 691, 695.) No such conflicts of interest arise where a successor estate representative sues a former representative's attorney upon allegations that the attorney committed malpractice when litigating to recover estate assets. We believe that the Oregon courts would not extend *Roberts* to the situation presented here. We conclude that the Oregon courts would hold, as do California courts, that a successor representative may sue attorneys retained to act on behalf of the estate by a prior representative. (*Borissoff, supra*, 33 Cal.4th at p. 530.)

2. *Even if California and Oregon law differ, California alone has an interest in regulating California attorneys and thus its law permitting a successor estate representative to sue attorneys retained by the former representative applies*

Even if California and Oregon law differ on this point, no genuine conflict of interest exists. If relevant laws differ between two states, the governmental interest analysis examines " 'each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.' [Citation.] In conducting this inquiry, 'we may make our own determination of [the relevant] policies and interests, without taking "evidence" as such on the matter.' " (*Sullivan v. Oracle Corp., supra*, 51 Cal.4th at p. 1203.) There is "no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied. [Citations.] 'When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.' " (*Hurtado v. Superior Court, supra*, 11 Cal.3d at p. 580.)

Here, California alone has a legitimate interest in the application of its law and policy concerning an attorney's liability to estate representatives. In *Borissoff, supra*, 33 Cal.4th at page 531, the California Supreme Court articulated the policy reason for imposing liability under the circumstances

presented here: "the successor fiduciary must have standing to sue the predecessor's attorney if there is to be an effective remedy for legal malpractice that harms estates and trusts administered by successor fiduciaries." The statement reveals the two central interests California has in the application of its law holding attorneys accountable to successor representatives: protection of estates and regulation of attorneys.

Under the circumstances of this particular case, it is the second interest that is preeminent. California does not have an interest in protecting Oregon estates, a point that defendants emphasize in their briefing on appeal. But California does have an interest in regulating attorneys practicing here, even those attorneys retained by Oregon clients. Defendants acknowledge California's interest in regulating attorneys but argue that the interest is "irrelevant to an analysis of [the successor representative's] standing," because there are alternative means to regulate attorneys—the prior representative can sue or administrative disciplinary actions can be instituted. The proposed means are of doubtful efficacy. A prior representative may have no interest in acting for the benefit of the estate, especially a representative removed for cause, and the possibility of administrative sanctions is no substitute for an action for damages. Holding attorneys accountable to successor representatives is important in furthering California's interest in regulating attorneys. That interest is strong here, where there was alleged malpractice by attorneys licensed in California who filed suit in California against a California defendant concerning a California business.

Oregon has no interest in regulating California attorneys. Oregon's sole connection to the case is as the appointing jurisdiction of the estate representatives, one an Oregon domiciliary (Genevieve Smith) and the other a California domiciliary (Daniel Smith). Although Oregon has a strong interest in estate administration generally, Oregon does not have an interest in shielding California attorneys from liability to estate representatives. Defendants assert that application of California's law to the attorney-client relationship between a California attorney and an Oregon estate representative "would undermine Oregon's authority to manage the administration of its own estates." Defendants note that Oregon has an interest in safeguarding attorney-client relationships, like that of an attorney advising an estate representative in the administration of the estate. (Conflicts of Interest, Current and Former Clients: Representation of Original and Successor Personal Representatives (Or. Eth. Opn. 2005-62 WL 5679651).) We accept defendants' argument that Oregon has an interest in regulating attorney-client relationships. But that interest relates to Oregon attorneys. The Oregon court in *Roberts* explained that the rationale of the rule limiting an attorney's liability for malpractice to those with whom the attorney is in privity "is pragmatic: the indirect economic consequence of an attorney's conduct are too far-reaching and indefinite," and thus the rule protects attorneys from

boundless litigation. (*Roberts, supra*, 986 P.2d at p. 693.) The privity rule also protects attorneys from potential conflicts of interest by limiting the attorney's duty to his or her client rather than to multiple individuals with potentially diverse claims. (*Id.* at pp. 695–696.) The Oregon court's interest in generally limiting attorney liability to those in contractual privity with the attorney is not an interest implicated here, where the attorneys are not Oregon attorneys retained to assist in the administration of the estate but California attorneys retained to prosecute California litigation. The availability of redress for legal malpractice of California attorneys in a California court does nothing to undermine Oregon's interest in regulating Oregon attorneys, nor does it undermine Oregon's authority to manage the administration of its estates. The Oregon court may order the successor representative to act or not act in matters concerning the estate, including the initiation of litigation, and that power is unimpaired.

> 3. *Even if Oregon has an interest in estate administration that is impaired by permitting a successor representative to sue California attorneys for malpractice, California's interest in regulating attorneys would be more impaired if those actions were barred and thus California law should be applied*

"The final step in governmental interest analysis requires us ' "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" ' and to apply ' "the law of the state whose interest would be the more impaired if its law were not applied." ' " (*Sullivan v. Oracle Corp., supra*, 51 Cal.4th at p. 1205.) Assuming for the sake of argument a genuine conflict does exist between the laws of California and Oregon on the liability of attorneys to successor representatives, to subordinate California's interests to those of Oregon would bring about the greater impairment. California's interest in protecting the public from incompetent attorneys would be undermined were attorneys immunized from liability based on the fortuity that one foreign estate representative had been replaced by another. In contrast, Oregon's interest in managing their domiciliaries' estates suffers no impairment by making a cause of action available to redress malpractice by California attorneys. California's law is properly applied to the standing issue.

## III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to grant the motion for judgment on the pleadings with leave to amend. Plaintiff shall have an opportunity to obtain ancillary appointment and

to amend the complaint to allege capacity to sue as the ancillary representative. Plaintiff and appellant shall recover costs incurred on appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278(c)(1).)

Ruvolo, P. J., and Reardon, J., concurred.