IN RE GUARDIANSHIP OF ANGELA LILLIAN GAUBE,
AN INCAPACITATED AND PROTECTED PERSON.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN
SERVICES, APPELLEE, V. WILLIAM H. GAUBE
AND SANDRA L. GAUBE, APPELLANTS.
707 N.W.2d 16

Filed November 22, 2005.   No. A-04-1374.

█

Thomas K. Harmon, of Respeliers & Harmon, P.C., for appellants.

Jon Bruning, Attorney General, and Ronald L. Sanchez, Special Assistant Attorney General, for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

William H. Gaube and Sandra L. Gaube, coguardians for their daughter, Angela Lillian Gaube, appeal from an order of the county court for Douglas County, Nebraska. They appeal the court's order that they repay $25,500 to Angela's account for amounts they paid to themselves for Angela's monthly living expenses and $3,484.74 they paid to third-party retailers, all without court approval. They also contest the court's order that they pay, from Angela's funds, the Nebraska Department of Health and Human Services (DHHS) the sum of $3,948.93 for the cost of services received by Angela.

William and Sandra assert that the county court erred in failing to "ratify" certain payments and in failing to establish that DHHS' claimed costs were fair and reasonable. They also collaterally attack the determination made by DHHS in an order from an administrative appeal that Angela is liable for the cost of services received through DHHS.

We find that the court did not err in ordering William and Sandra to repay Angela's account, because they did not receive prior approval for claims in the amount of $25,500. We find that the court erred in ordering William and Sandra to repay an additional $3,484.74 for other items. Additionally, we find that the court did not err in ordering William and Sandra to pay DHHS costs of services received by Angela, because William and Sandra's assertion that DHHS must prove that costs are fair

and reasonable is incorrect. There is no requirement that costs of services provided be proven to be fair and reasonable in this situation, because the governing statutes provide that Angela's liability for services, to the extent of her ability to pay, is DHHS' cost of providing the services. Accordingly, we affirm in part, and in part reverse and remand for further proceedings.

## II. BACKGROUND

Angela was born on February 1, 1982. She "suffers from Down's Syndrome and has limited mental capacity making it difficult for her to protect herself." Brief for appellants at 7. As such, the court appointed William and Sandra as her coguardians.

The "Order Appointing Guardian" lists William and Sandra's powers and duties as coguardians. It expressly provides that William and Sandra "may not use funds from the ward's estate for room and board which the ward, the ward's spouse, parent or child has furnished the ward unless a charge for the service is approved by order of the Court." In addition, the county court issued "Letters of Co-Guardianship," which include a limitation that directs William and Sandra not to pay themselves or their attorney compensation from Angela's assets, "except as approved by an order of this Court."

Until September 2003, Angela's income consisted of wages from her part-time job, supplemental security income, and assistance from the State of Nebraska. In September 2003, Angela inherited $42,000 from her aunt, which inheritance resulted in her supplemental security income's being discontinued.

Angela had been receiving services from DHHS, such as day services and case management services, for which she was not liable for any costs. The day services for Angela consisted of "employment support services with a class component for various skills including life skills." Brief for appellee at 6. The case management services provided by DHHS "consist[ed] of planning, coordination, support and monitoring activities." *Id.* Beginning in July 2003, Angela was required to pay for these services.

Sandra appealed the determination of DHHS that "full payment would have to be made for the developmental disabilities supports and services received by Angela." DHHS held an

administrative hearing on August 13, 2004, to resolve whether full payment was due for the support and services received by Angela. The director of DHHS entered an order on August 23 requiring William and Sandra to pay the full amount for the services provided. The record indicates that DHHS gave Sandra notice of the right to appeal the administrative order, but that she did not appeal it.

William and Sandra had made payments from Angela's account to third parties, and to themselves, without prior court approval. William and Sandra assert that the payments they made to themselves were "reimbursement . . . of bills including the cost of room, board, transportation, clothing, telephone, [and] entertainment." Brief for appellants at 8.

On August 23, 2004, William and Sandra filed an "Application for Approval of Accounting and for Review of the Guardian's Expenditures." The application requests, in pertinent part, an order "[p]rescribing the nature and amounts of expenses that may be incurred by [William and Sandra as] Co-Guardians of Angela . . . without prior approval of the court of each such expense" and "approving and ratifying the payment of the expenses previously made by [William and Sandra as] Co-Guardians of Angela."

On September 17, 2004, DHHS filed a "Motion for Payment of Claim and Objection to Approval of Accounting" in the above proceeding. The motion asserts, inter alia, that DHHS has a claim against Angela and her estate for services and that Angela's "liability was affirmed by [the D]HHS Director [in] her Finding and Order dated August 23, 2004, in the administrative appeal proceeding under the Administrative Procedure Act." Additionally, regarding its objection to the approval of accounting, DHHS asserted that payments were made by William and Sandra to themselves without advance court approval, contrary to Neb. Rev. Stat. § 30-2628(a)(4)(ii) (Cum. Supp. 2002), Neb. Ct. R. of Cty. Cts. 37(II) (rev. 2000), and the letters of coguardianship.

On October 12, 2004, the hearing was held on William and Sandra's application and DHHS' motion. The court heard testimony from Sandra; Lori Ann Sperry, a service coordinator for DHHS; and Christine Ann Ford, an accountant for DHHS.

Sandra's testimony consisted of information pertaining to Angela's financial history and expenses. She explained her failure to seek prior approval from the court for payments made to William and herself and to third parties from Angela's account and requested the court's ratification of those payments. Sperry testified regarding the process used by DHHS in providing services, and specifically regarding the services Angela received. In addition, Sperry provided case management for Angela and was Angela's service coordinator. Ford, as an accountant in the financial responsibility office of DHHS, testified regarding costs and billing of services.

The court entered an order on November 24, 2004, finding that William and Sandra "received $25,500.00 without court approval and paid an additional $3,484.74 for other items without court approval" and that DHHS' claimed costs were shown to be "usual and customary." Therefore, the court ordered William and Sandra to repay $28,984.74 to Angela's account and to pay DHHS $3,948.93 from Angela's funds. This appeal followed.

## III. ASSIGNMENTS OF ERROR

William and Sandra have assigned five errors on appeal, which we restate and combine generally into three. They assert that the county court erred (1) by failing to ratify payments made to William and Sandra for Angela's monthly living expenses, (2) by failing to ratify certain payments made from Angela's account to two retailers, and (3) by finding that DHHS' claim must be paid.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

In the absence of an equity question, an appellate court, reviewing probate matters, examines for error appearing on the record made in the county court. *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005); *In re Trust Created by Martin*, 266 Neb. 353, 664 N.W.2d 923 (2003). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *In re Conservatorship of Hanson*, 268 Neb. 200, 682 N.W.2d 207 (2004); *In re Guardianship &*

*Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004).

An appellate court, in reviewing a judgment of the trial court for errors appearing on the record, will not substitute its factual findings for those of the trial court where competent evidence supports those findings. See, *McCray v. Nebraska State Patrol*, 270 Neb. 225, 701 N.W.2d 349 (2005); *Eledge v. Farmers Mut. Home Ins.*, 6 Neb. App. 140, 571 N.W.2d 105 (1997). To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *In re Estate of Bauer*, 270 Neb. 91, 700 N.W.2d 572 (2005); *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *McCray v. Nebraska State Patrol, supra.*

### 2. Application for Approval of Accounting and for Review of Guardian's Expenditures

William and Sandra argue that it is their duty to furnish Angela with the necessaries of life suitable to her condition and that payments made for that purpose from Angela's estate may be ratified and approved by the court. "Ratification," as it is used here by William and Sandra, means that although prior approval of certain expenses is required but was not obtained, the court may nevertheless "adopt" William and Sandra's payments of such expenses at the time of the annual accounting. William and Sandra allege that the court erred in not ratifying payments made on Angela's behalf, including payments they made to themselves and to third parties. Put another way, William and Sandra recognize that they were required to seek prior approval for certain payments made from Angela's estate, but assert that such failure can be remedied by the court's ratification of payments at the time of annual accounting.

We find that the court did not err in ordering William and Sandra to reimburse Angela's estate for payments they made to themselves. Absent prior court approval, William and Sandra

were barred from making individual claims in excess of $250 against Angela's estate, from paying themselves " ' "compensation from the assets or income" ' " of Angela, and from using Angela's funds for room and board which they, as her parents, had furnished. See brief for appellants at 20. However, we find that the court erred in ordering remuneration for certain other unapproved payments made to third parties. The court's decision regarding these payments was not supported by the record, because while these payments were made to third-party retailers without prior approval, such approval was not necessary regarding these payments.

### (a) Payments to Coguardians

William and Sandra assert that payments they made to themselves without the court's prior approval may nonetheless be ratified by the court. They allege three grounds upon which ratification should be granted, which we analyze below.

#### (i) Rule 37: Individual Claims of Coguardians

William and Sandra argue that their request for ratification of payments they made from Angela's account to themselves should be granted because the payments were for reimbursement of Angela's expenses. They assert that they were acting within their duty to supply Angela " 'with the necessaries of life suitable to [her] condition out of [funds from her] estate.' " (Emphasis omitted.) Brief for appellants at 22. However, we find that the court did not err in failing to ratify these payments, because William and Sandra neglected to obtain prior court approval.

■ County court rule 37, promulgated by the Nebraska Supreme Court and binding upon the county court for Douglas County, forbids a guardian who "has individual claims of his or her own . . . against the estate of the ward or protected person [from paying] the claims which aggregate in excess of $250 without first specifically informing the court of his or her adverse interest and obtaining the approval of the court."

William and Sandra made payments to themselves from Angela's estate, and they assert that these payments "were for the reimbursement of monthly expenses." Brief for appellants at 20. The annual accounting of Angela's estate for the period of

August 31, 2003, to August 4, 2004, reveals 12 disbursements of money to Sandra, each described as "living expenses," in the collective amount of $25,500.

Sandra testified that these disbursements were associated with out-of-pocket expenses" related to Angela, and she further detailed Angela's continuing expenses. She offered estimates for such expenses, including rent, food, clothing, utilities, telephone, security system, transportation, entertainment, and medical. Sandra estimated that Angela's living expenses averaged $2,024 per month during this time period, and Sandra asked the court to approve the payments. However, William and Sandra did not seek the court's prior approval for these payments. They argue that they were unaware of the requirement that they seek court approval, and they acknowledge their mistake. Specifically, Sandra recounted at trial, "I did not think about that simply because under federal law I was required to take those [supplemental security] funds and report to Social Security then how those funds were expended, so I . . . didn't think to carry it over into county court once [Angela] received her inheritance."

Nevertheless, county court rule 37 is clear: No individual claims in excess of $250 were to be made by William and Sandra against Angela's estate without prior approval of the court. Under the facts of this case, we find no exception to this rule. Therefore, William and Sandra's argument that the court should ignore the requirement of prior approval by ratifying these payments because they were for Angela's support is without merit.

### (ii) Rule 43 and Letters of Coguardianship

William and Sandra contend that the court should ratify the payments they made to themselves from Angela's assets because the payments were reimbursement for Angela's expenses and not compensation to themselves. We find this argument to be without merit, and under the facts of this case, we hold that such remuneration made to coguardians from the estate of a ward must receive court approval prior to disbursement.

■ Neb. Ct. R. of Cty. Cts. 43 (rev. 2000), promulgated by the Nebraska Supreme Court and binding upon the county court for Douglas County, provides in pertinent part the following:

Language expressly limiting powers shall be included on all letters of guardian/conservator in the following language: "You shall not pay yourself or your attorney *compensation* from the assets or income of your ward . . . without first obtaining an order therefor, after an application, notice to the interested persons, and hearing thereon."
(Emphasis supplied.)

██ In addition, the Nebraska Supreme Court has addressed the issue of "compensation" in the context of letters of conservatorship in *In re Conservatorship of Hanson*, 268 Neb. 200, 682 N.W.2d 207 (2004). We find no distinction between a guardianship and a conservatorship for the purpose of determining whether we shall consider payments as "compensation" per the letters of guardianship or letters of conservatorship in a given case. In *In re Conservatorship of Hanson*, the court adopted a broad definition of "compensation" which includes "any form of payment or remuneration made to the conservator from assets of the protected person." 268 Neb. at 205, 682 N.W.2d at 211. The court noted that

the appointment of a conservator is based upon a judicial determination that it is necessary to protect the property of one who is unable to manage his or her property and affairs effectively for various reasons, including "physical illness or disability," and that such person "has property which will be wasted or dissipated unless proper management is provided . . . ."

*Id.* at 204, 682 N.W.2d at 210. By adopting a broad definition of "compensation," the court underscored the concept embodied in rule 43 that "self-dealing by a conservator may be permissible, but only after a judicial finding that there is an adequate reason for the transaction." *In re Conservatorship of Hanson*, 268 Neb. at 206, 682 N.W.2d at 211.

In *In re Conservatorship of Hanson*, the conservator of the estate of an incapacitated ward had made payments to herself out of conservatorship funds without court approval. In addition, she argued that such payments should be ratified by the court. She asserted that the payments were made pursuant to an oral agreement with the ward "which antedated her appointment as conservator." *Id.* at 201, 682 N.W.2d at 208.

In the instant case, William and Sandra made payments to themselves from Angela's assets without court approval. They argue that the court should consider such payments as not compensation, but reimbursement for expenses they paid on Angela's behalf. In addition, the letters of coguardianship, filed in December 2000, expressly provide the limitation that William and Sandra are not to pay compensation to themselves or their attorney from Angela's assets unless they receive approval by order of the court.

We follow the Nebraska Supreme Court's determination in *In re Conservatorship of Hanson* that the concept embodied in rule 43 and the express limitation provided in the letters of conservatorship, or in this case coguardianship, are controlling. Payments made from Angela's assets may be legitimate and consistent with William and Sandra's obligations to Angela as her coguardians; "however, subjecting all such transactions to the filter of prior judicial approval affords a measure of protection against those which are not." *In re Conservatorship of Hanson*, 268 Neb. at 205-06, 682 N.W.2d at 211. We find William and Sandra's argument to be without merit.

### (iii) Room and Board

William and Sandra assert that the court erred in not ratifying the payments they made to themselves from Angela's assets, including those made as reimbursement for room and board. They argue that it is their duty as coguardians to furnish Angela with the necessaries of life suitable to her condition out of her estate. They assert that "necessaries of life" include " 'food, drink . . . shelter . . . and a suitable place of residence.' " Brief for appellants at 22. However, we find their assertion to be without merit because they did not obtain an order of the court for the payments.

Section 30-2628(a)(4)(ii), regarding the general powers, rights, and duties of guardians, instructs that when no conservator for the estate of a ward has been appointed, the guardian "may not *use* funds from his or her ward's estate for room and board which he or she, his or her spouse, parent, or child has furnished the ward unless a charge for the service is approved by order of the court." (Emphasis supplied.) In addition, the order

of appointment in this case, filed in December 2000, imposes the same restriction.

Evidence adduced at trial shows that payments William and Sandra made to themselves from Angela's account were, in part, for Angela's room and board. Sandra testified that in calculating the out-of-pocket expenses incurred by William and herself, she considered a mortgage, taxes, and insurance associated with the residence to determine an estimate of Angela's rent. In addition, Sandra testified that she included estimates of food expenses in the payments she and William made to themselves. She based these estimates on "the types of food that [Angela] eats per month plus her drinks and just her special needs [which include] softer foods [because] she has trouble with choking if she eats foods that are too thick or too crunchy."

William and Sandra, in having made unapproved payments to themselves from Angela's assets for her room and board expenses, violated § 30-2628(a)(4)(ii). As we did in our analysis of William and Sandra's expenditures vis-a-vis "compensation," we conclude regarding room and board costs that expenditures made from a ward's estate must be given the same filter of prior judicial approval that was emphasized by the Nebraska Supreme Court in *In re Conservatorship of Hanson*, 268 Neb. 200, 682 N.W.2d 207 (2004). Therefore, under the facts of this case, we determine that there is no exception to the rule requiring prior approval and that the use of Angela's funds for room and board furnished by William and Sandra was improper. William and Sandra's claim that the disbursements they made to themselves, and specifically those disbursements being used for Angela's room and board, should be ratified by the court is without merit.

### (iv) Conclusion

Upon our examination of the record, we determine that the judgment of the county court regarding the order to pay $25,500 to Angela's estate conforms with the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. See, *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005); *In re Conservatorship of Hanson, supra*. The record clearly establishes that William and Sandra made

payments to themselves from Angela's funds for Angela's expenses, including room and board, without prior approval of the court. By making these payments to themselves, William and Sandra violated the order of appointment and the letters of coguardianship. Additionally, they made such payments in violation of § 30-2628(a)(4)(ii) and county court rules 37 and 43. As such, this assignment of error is without merit.

### (b) Unapproved Expenditures to Third Parties

The annual accounting of Angela's estate includes all receipts and disbursements made from Angela's account during the period of August 31, 2003, to August 4, 2004. Based on this accounting, the court ordered that William and Sandra repay a total of $3,484.74 that was paid from Angela's account to two retailers. This total is separate and distinct from the payments William and Sandra made to themselves. William and Sandra assert that the court erred in failing to ratify these payments made on Angela's behalf without court approval. In our review for errors appearing on the record, we determine that the court did err in failing to ratify these two payments, because it based its decision on William and Sandra's failure to obtain prior judicial approval.

The duty owed by guardians of an incapacitated ward is set forth in § 30-2628. Section 30-2628(a) provides in part that "a guardian of an incapacitated person has the same powers, rights, and duties respecting his or her ward that a parent has respecting his or her unemancipated minor child." Additionally, § 30-2628(a)(4)(ii) provides that guardians may "[r]eceive money and tangible property deliverable to the ward and apply the money and property for support, care, and education of the ward." These provisions do not mandate the prerequisite of judicial approval.

William and Sandra made a payment from Angela's account to a furniture retailer from which they purchased a couch selected by Angela. At trial, Sandra testified, "Angela uses it and that's what we purchased for her . . . we bought a good couch because it will last her 30-some years . . . it's not in her room, it's in the living room." This expenditure amounted to $2,307.99. Additionally, William and Sandra made a payment from Angela's account to a storage building and garage retailer

from which they purchased a shed to store some of Angela's belongings, such as "her bicycle, all of her equipment, bocci [sic] equipment, snow shoe equipment, and so forth." This expenditure amounted to $1,176.75.

The county court's order stated that William and Sandra "paid . . . $3,484.74 for [these] items without court approval." It is clear that the court relied upon county court rule 37 or 43, or upon *In re Conservatorship of Hanson*, 268 Neb. 200, 682 N.W.2d 207 (2004)—all of which require prior judicial approval for certain expenditures—and thereby held that William and Sandra had a duty to obtain prior judicial approval for expenditures made to the two retailers. This part of the county court's order is in error.

When reviewing a judgment for errors appearing on the record, our inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*; *In re Guardianship & Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004). Because the court based its decision on an incorrect rule of law, namely that prior court approval was necessary for such expenditures to third parties, we conclude that the decision must be reversed in part and the cause remanded. Remand is necessary where the trial court may have based its order on an incorrect rule of law. See *Anderson v. Transit Auth. of City of Omaha*, 241 Neb. 771, 491 N.W.2d 311 (1992) (recognizing that remand for new trial was necessary where trial court may have based its decision, inter alia, on incorrect rule of law). On remand, the court shall make a determination, based on the record that presently exists, whether the payments made to the two retailers were for Angela's "support, care, and education." See § 30-2628(a)(4)(ii).

### 3. DHHS CLAIM AGAINST ESTATE

#### (a) Determination of Costs

William and Sandra claim that the amount the court ordered them to pay for services provided through DHHS "cannot be supported on appeal because no sufficient or proper evidence was adduced to support the State's claim." Brief for appellants at 27. They assert that the State solely adduced evidence that the

costs of the services were "usual and customary" and thus failed to offer evidence that the costs were "fair, necessary and reasonable." *Id.* at 28. We find that the court did not err in ordering William and Sandra to pay the full amount for these services, because DHHS adduced evidence as to the cost of such services, which adduction satisfies Neb. Rev. Stat. §§ 83-364 through 83-366 and 83-1211 (Reissue 1999 & Cum. Supp. 2004).

Neb. Rev. Stat. § 83-1208 (Reissue 1999), of the Developmental Disabilities Services Act, governs developmental disability services provided by DHHS. This act is applicable to the specialized services received by Angela, which were, under § 83-1208, "service[s] provided specifically for persons with developmental disabilities." The evidence adduced is that Angela has a developmental disability as defined by Neb. Rev. Stat. § 83-1205 (Reissue 1999), which articulates that "[d]evelopmental disability shall mean: (1) Mental retardation." Further, § 83-1211 directs:

> A person receiving specialized services from a local specialized program which receives financial assistance through [DHHS] shall be responsible for the *cost of such services* in the same manner as are persons receiving care at the Beatrice State Developmental Center. Provisions of law in effect on September 6, 1991, or enacted after such date relating to the responsibility of such persons and their relatives for the cost of and determination of ability to pay for services at the center shall also apply to persons receiving services from specialized programs.

(Emphasis supplied.) Sections 83-364 and 83-366 provide instruction as to a person's liability for his or her "care, support, maintenance, and treatment," § 83-364, and afford a reduction of such liability based on that person's limited ability to pay.

The method used to determine such costs is also dictated by the Legislature in § 83-365, which pronounces:

> [DHHS] shall periodically determine the individual cost, exclusive of the cost of education, for the care, support, maintenance, and treatment of the patients in each state institution and for persons receiving treatment prescribed by an institution following release or without being admitted as a resident patient. In making such determinations,

[DHHS] may use averaging methods for each institution if, in the judgment of the director, it is not practicable to compute the cost for each patient. The cost of capital expenditures and capital construction shall not be included in making such determinations.

DHHS asserts that the cost of services such as those provided to Angela is "[D]HHS' expense in providing care, support, maintenance and treatment which may be apportioned and assessed to each individual based on averaging methods authorized by section 83-365." Brief for appellee at 13. William and Sandra's contention that the costs to Angela should be proven fair and reasonable amounts to a collateral attack on this statutory procedure that governs how DHHS is to determine costs. DHHS argues that if it were required to prove that costs are fair and reasonable, then the consequences would be incongruent with § 83-365. Specifically, DHHS contends that it would

require adoption of the propositions that (i) the cost for which a [developmental disability] service recipient is liable is not [D]HHS' cost, but rather an amount which may be a different amount based on other factors, such as rates in the open market for like services, and (ii) such different liability amount is to be determined by an individualized review of the individual's [developmental disability] services and their respective values.

Brief for appellee at 13-14.

Ford, whose job is to determine the financial responsibility of those receiving developmental disability services through DHHS, testified that DHHS' financial responsibility office assessed Angela's obligation to pay for services based on her income and assets. At trial, William and Sandra's counsel made objections to exhibits that demonstrated the charges for services rendered through DHHS. He argued that there had been "no proper and sufficient foundation that [Ford] can testify as to the fairness or the reasonableness of the value of these particular services." The court overruled the objections. Ford testified that Angela was charged for services from April through September 2004, in the total amount of $7,703.07, and that William and Sandra had made payments to DHHS reducing the amount due to $3,948.93.

Further, testimony by Ford revealed that the costs of services were based on expenses calculated by DHHS for services rendered. Specifically, the cost of case management services is a "flat monthly rate . . . that [is] reviewed annually by the director of [DHHS]." The costs of day services such as those provided to Angela are based on "the cost to the [S]tate." Ford testified that DHHS "only request[s] reimbursement from the client to the extent that [DHHS] pay[s] out to the [service] provider."

Additionally, Angela's ability to pay was determined based on her assets, in particular the fact that her estate had assets in excess of $4,000. Specifically, "if an individual has resources over $4,000, then [he or she] must pay the full amount for the services" he or she receives. The annual accounting illustrates that on August 4, 2004, Angela's assets totaled $6,401.94.

█ We determine that the decision of the county court ordering William and Sandra to pay DHHS $3,948.93 conforms with the law and is supported by competent evidence, as detailed above. Angela received specialized services through DHHS and, under § 83-1211, is liable for the "cost of such services," with consideration taken as to her ability to pay. That cost is based on DHHS' determination of "individual cost[s]" made using averaging methods, see § 83-365, and on DHHS' liability to the various providers. Thus, the statutory language is clear that Angela's liability is based on the costs of the services, and there is no further requirement that DHHS offer proof as to the costs' fairness and reasonableness. Instituting such a requirement would be contrary to § 83-365, which, as noted, allows averaging methods to determine costs, rather than requiring an individualized determination. As such, we find William and Sandra's assignment of error to be without merit.

### (b) Administrative Order and Claim Against Guardianship Estate

William and Sandra argue that the State must prove that "the claim filed was valid," and they contend that the State failed to do so. See brief for appellants at 28. As such, they maintain that the court erred in ordering payment of the costs claimed by DHHS. We disagree because the claim against Angela's estate by DHHS

was made based on an administrative order, which cannot be collaterally attacked in this proceeding.

The Administrative Procedure Act provides the procedure that William and Sandra must follow to contest an administrative order. Specifically, Neb. Rev. Stat. § 84-917 (Reissue 1999) provides:

> (1) Any person aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review under the Administrative Procedure Act. . . .
>
> (2)(a) Proceedings for review shall be instituted by filing a petition in the district court of the county where the action is taken within thirty days after the service of the final decision by the agency.

As such, judgments rendered by administrative agencies acting in a quasi-judicial capacity, as was DHHS, are not subject to collateral attack if the agency had jurisdiction over the parties and the subject matter. *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004).

Sandra appealed, on behalf of Angela, DHHS' determination that Angela was liable for full payment of the developmental disability support and services she had received. This appeal was in the form of an administrative proceeding held on August 13, 2004. Ford testified at the hearing and indicated that Angela's ability to pay was determined on the basis of her assets of $28,680 and that as such, Angela was required to pay for the services in full. DHHS' director entered an order and final judgment on the appeal, finding that Angela was liable for full payment for the services she received from DHHS during the period at issue. No judicial appeal was taken from this proceeding.

At the hearing in the instant case, before the county court, William and Sandra's counsel attempted to obtain testimony as to whether the charges claimed by DHHS were fair and reasonable. In questioning Ford, William and Sandra's counsel asked whether she had "any ability to testify as to whether [the charges were] fair or reasonable [and whether she made] certain assumptions as to their validity." She answered that she did not personally "set the rates" and that her role was limited to "accounting." Specifically,

she stressed, "I would reinforce or apply the rules and regulations under [DHHS] based on the amount of [the] statement that goes out. And then that's the amount that's billed and that's hopefully the intent of what's collected."

In addition, Sandra testified that she sought explanations "as to what the bills were." Sandra said that some of the bills she received were incongruent with "what [she was] hearing from" the corresponding service provider. She requested that DHHS provide her with explanations as to the costs associated with the bills.

We find that William and Sandra were precluded from challenging the validity of DHHS' claim in the county court. Pursuant to the Administrative Procedure Act, the proper forum for such an attack was in the district court, within 30 days after the final order was entered on their administrative appeal. See § 84-917. As such, we find that this assignment of error is without merit.

## V. CONCLUSION

The county court's order mandating that William and Sandra repay Angela's account $25,500 for payments they made to themselves is affirmed. The county court's order directing William and Sandra to pay DHHS, on Angela's behalf, costs of services received by Angela is also affirmed.

However, the court's order mandating that William and Sandra repay Angela's account $3,484.74 for payments made to the two retailers is reversed, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.