IN RE GUARDIANSHIP & CONSERVATORSHIP OF
THOMAS L. HERRICK, A PROTECTED PERSON.
TODD A. HERRICK, APPELLANT, V.
TINA M. PAULSEN, APPELLEE.
___ N.W.2d ___

Filed April 29, 2014.    No. A-12-962.

1.  **Guardians and Conservators: Appeal and Error.** An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court.

2.  **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3.  ____: ____. An appellate court, in reviewing a judgment of the trial court for errors appearing on the record, will not substitute its factual findings for those of the trial court where competent evidence supports those findings.

4.  **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

5.  **Judgments: Jurisdiction.** Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law.

6.  **Standing: Jurisdiction.** Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process.

7.  **Standing.** Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. The focus is on the party, not the claim itself.

8.  **Standing: Jurisdiction.** Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf.

9.  ____: ____. The defect of standing is a defect of subject matter jurisdiction.

10. **Parties: Standing: Jurisdiction.** The issue of standing is jurisdictional; a party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding.

11. **Courts: Parties: Justiciable Issues: Words and Phrases.** The capacity to sue is the right to come into court. A party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy.

12. **Rules of the Supreme Court: Pleadings.** Under Nebraska's pleading rules, a party wishing to raise the issue of whether another party has the necessary capacity must specifically deny that the opposing party has capacity.

13. **Courts: Parties: Jurisdiction.** Unlike standing, a party's capacity to sue or be sued is not jurisdictional; however, lack of capacity deprives a party of the right to come into court.

14. **Standing: Moot Question.** A plaintiff's personal interest is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter.

15. **Moot Question: Appeal and Error.** A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.

16. ____: ____. A case is not moot unless a court cannot fashion some meaningful form of relief, even if that relief only partially redresses the prevailing party's grievances.

17. **Parties: Jurisdiction: Waiver.** Because a party's capacity to sue or be sued is not jurisdictional, a challenge to a party's capacity must be brought at the earliest opportunity or it is waived.

18. **Parties: Proof.** The party seeking to raise the issue that a party has lost capacity during the course of litigation bears the burden of establishing that the party raised such issue at the first opportunity, thereby properly preserving it.

19. **Appeal and Error.** Errors argued but not assigned will not be considered on appeal.

Appeal from the County Court for Dawson County: Carlton E. Clark, Judge. Affirmed.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellant.

Nathan T. Bruner, of Greenwall, Bruner & Frank, L.L.C., for appellee.

Inbody, Chief Judge, and Moore and Riedmann, Judges.

Inbody, Chief Judge.

## I. INTRODUCTION

This appeal was filed by Todd A. Herrick (Todd), the proposed successor conservator of Thomas L. Herrick (Herrick), alleging that the Dawson County Court erred in certain determinations regarding the challenge of the inventory of Herrick's estate filed by the original conservator, Tina M. Paulsen.

## II. STATEMENT OF FACTS

Herrick is the protected person in this case. Todd is Herrick's son, and Paulsen is Herrick's daughter. In September 2010,

Herrick suffered a stroke resulting in his incapacity. Paulsen was appointed as the original conservator, and Todd was appointed as the original guardian.

On June 6, 2011, Paulsen filed an "Accounting of the Protected Party's Assets and Liabilities" in which she listed a 2007 Hummer H3 owned by Herrick as an asset valued at $16,700. On June 7, the county court sustained Paulsen's motion to sell Herrick's assets, personal property, and real estate. Paulsen and her husband, William Paulsen, traveled to Herrick's home in Lexington, Nebraska, to pick up Herrick's Hummer and return it to their home in Aberdeen, South Dakota. When Paulsen retrieved the Hummer, it was locked in Herrick's garage and had a "shorted out" battery. Paulsen and William replaced the battery in the Hummer before returning to South Dakota. The Hummer was smoking when they picked it up and continued smoking, and the engine ran sluggishly during the trip back to South Dakota. After arriving in South Dakota, William drained the oil from the Hummer's engine and found that the oil was sludge and had clumps in it.

Shortly thereafter, Paulsen took the Hummer, which had not been driven since being brought to South Dakota, to a local Aberdeen automobile repair shop owned by Brad Brake. Brake inspected the Hummer and provided Paulsen with an estimate for the cost of repairing the Hummer. Brake indicated that the "[e]ngine light was on" and that the Hummer was "[using] oil and smoking" and needed "lots of [e]ngine work." Brake estimated the cost for repair at "about" $4,900. Paulsen testified that she checked the "cars.com" and Kelley Blue Book Web sites between May 1 and July 1, 2011, and determined that the value of the Hummer was between $9,000 and $12,000. On July 1, Paulsen sold the Hummer to Brake for $4,200, which price reflected a $4,900 discount for the cost of necessary repairs. At the time of the sale to Brake, the Hummer had 58,307 miles and had been driven less than 2,000 miles from the time it was originally purchased by Herrick in March 2010.

In February 2012, Paulsen filed an accounting of Herrick's assets and liabilities. On February 15, Todd, in his capacity

as the original guardian, filed an application for complete accounting, surcharge, and indemnification, alleging that the accounting filed by Paulsen was insufficient and that Paulsen sold the Hummer for substantially less than its fair market value. Todd requested in the application that Paulsen be surcharged or required to indemnify Herrick's estate. Paulsen filed an updated inventory/annual accounting on April 4, which did not list the Hummer as an asset and to which Todd objected. A hearing was held on April 9, which was continued on June 25. The issues raised by Todd on appeal center around the sale of the Hummer. Consequently, we focus our factual synopsis around that testimony and evidence concerning the Hummer.

The evidence established that on March 2, 2010, Herrick purchased a used Hummer with 56,870 miles for $18,400 from Plum Creek Motors in Lexington. The office manager at Plum Creek Motors testified that although used vehicles are sold "'as is,'" if the vehicle has a manufacturer's warranty, the warranty transfers to the subsequent owner of the vehicle.

The Hummer that Herrick purchased had a "five-year or 100,000 mile factory power train warranty" that transferred to Herrick upon his purchase of the Hummer. The warranty "would cover the engine, transmission, drive train, [and] the four-wheel drive system." The beginning of warranty coverage is determined by the "in-service date" of the vehicle. The "in-service" date, and start of the warranty coverage, applicable to Herrick's Hummer was January 12, 2007. Thus, according to the office manager, if something had been wrong with the Hummer's engine in July 2011, the issue would have been covered by warranty, provided that the Hummer was still within the applicable mileage limits and no other exceptions applied. For example, she testified that the warranty does not apply to vandalism to vehicles and that the warranty might not apply if an engine has been tampered with; however, the decision of whether a warranty would apply would be made by someone else at the dealership.

Paulsen admitted that she did not take the Hummer to the General Motors dealership in Aberdeen to determine why the vehicle was smoking or whether any necessary repairs would

have been covered by warranty. Paulsen testified that she did not consult with a General Motors dealership to determine if the Hummer was under warranty and that she assumed because the Hummer was a used vehicle, the factory warranty would not have been transferred to Herrick because he was a successive owner. Instead, she initially relied upon her husband, William, to determine what was wrong with the Hummer, then she took the Hummer to Brake's shop for a repair estimate. Paulsen testified that she has taken her personal vehicles to Brake's shop for repairs on three occasions and that he is not a friend or a relative of hers.

William testified that he had attended mechanic's college for 1 year and that although he did not graduate from that program, he has experience rebuilding and repairing engines and has worked with engines for over 30 years. William performed a compression check on the engine, which is a test to verify the physical condition of the engine's rings, pistons, valve seats, and valves. William testified that the readings for the Hummer from the compression check were "very bad," that the condition of the oil "would be typical of a vehicle if it had never had its oil changed in 48,000 miles," and that "clean oil, without being tampered with, does not get clumps in it and turn to road tar." William testified that Herrick had a history of properly maintaining his vehicles, so the condition of the oil as he found it would not have been that way prior to Herrick's stroke. William testified that relying on the tests he performed on the Hummer, he had reached the conclusion that the cause of the Hummer's condition was one of two things: that the engine oil had never been changed for the life of the vehicle and was sold to Herrick in that condition or that the vehicle was tampered with after it came into Herrick's possession. William testified that if a vehicle either is not maintained or is tampered with, there is no warranty coverage. Both Paulsen and William testified that after William researched whether the Hummer was covered by the manufacturer's warranty, they concluded that the manufacturer's warranty did not cover the Hummer's engine damage. However, in an answer to a request for admissions, Paulsen provided that "it is unknown if the warranty [on the Hummer]

was still in effect under the conditions that the vehicle was in on or before July 1, 2011."

Thomas Feltes, the owner and general manager of Plum Creek Motors since 1997, testified that Manheim was the largest wholesale automobile auction company in the country at that time and that it sells used vehicles to registered dealers nationwide. Feltes testified that Plum Creek Motors purchased vehicles from Manheim "from time to time," so Feltes was familiar with, and frequently used, a service Manheim provides called the Manheim Market Report (MMR). The MMR lists a vehicle and then gives the prices that the same model of vehicle has sold for during the timeframe indicated based upon the vehicle's mileage and condition—below average, average, or above average. Feltes testified that the MMR shows what a given model of vehicle would be worth in the market and that the MMR value is an average of similar vehicles which have actually sold at Manheim's auctions. The MMR printout states that for the week ending on April 4, 2012, in the Midwest region, which includes Nebraska and South Dakota, there were 14 2007 Hummers in average condition which were sold for an average sale price of $17,188 with an average odometer reading of 63,705 miles. The MMR printout projected that between April 9 and 16, a 2007 Hummer H3 of average condition would sell for $18,500, with the same projected sale price listed for 1 year later in April 2013. For the week ending April 4, 2012, nationwide, there were 99 2007 Hummer H3's in average condition which were sold through Manheim's auctions for an average sale price of $16,388 with an average odometer reading of 72,973 miles. This same MMR projected that between April 9 and 16, the sale price for a 2007 Hummer in above-average condition would be $19,800, in average condition would be $17,600, and in below-average condition would be $15,400. This MMR also projected that 1 year later, in April 2013, a 2007 Hummer of average condition would sell for $17,600 at auction.

Another MMR report was admitted into evidence for the time period ending in early February 2012. For the week ending February 4, there were 12 2007 Hummer H3's sold in the

Midwest region, with those in average condition selling for an average sale price of $15,839 with an average odometer reading of 74,687 miles. The report projected that between February 9 and 16, a 2007 Hummer H3 in average condition would sell at auction for $17,850, with a projected sale price 1 year later, in February 2013, of $16,900. For the week ending February 1, 2012, nationally, there were 67 2007 Hummer H3's sold, with those in average condition selling at an average sale price of $15,352 with an average odometer reading of 77,254 miles. This same report projected that between February 6 and 13, a 2007 Hummer H3 in average condition would sell at auction for $17,200 and that 1 year later, in February 2013, it would sell for $16,250.

Feltes testified that the impact that the vehicle's smoking would have on the fair and reasonable market value of Herrick's Hummer in July 2011 would depend on what was causing Herrick's Hummer to smoke. According to Feltes, if an internal engine failure of some sort was causing the Hummer to smoke, that would be covered under the vehicle's warranty and would be repaired at no cost. If the owner of the vehicle were to bear the cost of a total engine replacement, it could run $5,000 to $6,000. Feltes further testified that a vehicle as new as Herrick's Hummer would still have "considerable value" even if it had a bad engine.

On August 23, 2012, the Dawson County Court entered an order finding that Paulsen's accounting showed an inventory value of $16,700 for the Hummer on June 6, 2011, and that on July 1, she sold the same vehicle for $4,200. The court found that the fair market value of the vehicle was $13,300 and that there were necessary repairs on the vehicle in the amount of $4,900. The court found that Paulsen should be surcharged $4,200 for the unrecovered value of the vehicle. Although the court's order noted that Paulsen's accounting was insufficient and incomplete, the court determined that it was in the best interests of both Herrick and his estate for the accounting to be approved as submitted with the surcharge.

The court's order also accepted Todd's resignation as the original guardian and appointed Herrick's brother as successor guardian. The order accepted Paulsen's resignation as

original conservator and provided that "Todd . . . is hereby appointed as successor conservator for . . . Herrick to serve without bond. That letters of conservatorship are hereby issued and approved upon his filing the acceptance and other documents for his appointment." However, an affidavit filed by the Dawson County Court clerk magistrate set forth that Todd never filed an acceptance of his appointment as successor conservator and that no letters of appointment were ever issued.

Despite his failure to accept his appointment as successor conservator, Todd, on August 29, 2012, purportedly acting in his capacity as successor conservator, filed a motion to alter or amend the court's journal entry on the basis that the surcharge imposed upon Paulsen was inconsistent with the evidence presented. A hearing was held on the motion to alter or amend on September 18, but neither party requested that a bill of exceptions be prepared for this hearing. Thus, our only information regarding the hearing on Todd's motion to alter or amend comes from the transcript. The transcript reveals that despite the fact the hearing was being held on his motion, Todd's counsel did not appear at the hearing, and that the hearing was attended by Paulsen's counsel. No evidence was presented in support of the motion, and the matter was submitted without argument. The motion was overruled by the court on October 9. Thereafter, Todd, again purportedly acting in his capacity as successor conservator, appealed to this court, contending that the county court erred in finding that Herrick's Hummer required $4,900 worth of repairs and reducing its fair market value by that amount, in finding that the Hummer's fair market value was $13,300 when Paulsen sold it, and in the amount surcharged to Paulsen.

Upon this appeal being filed with this court, Paulsen filed a motion to dismiss for lack of jurisdiction for the reason that Todd was not authorized to file the appeal as successor conservator because he had never filed an acceptance of the appointment and, thus, he lacked standing to seek any legal remedies on behalf of the protected person, Herrick. We denied Paulsen's motion for summary dismissal, but reserved

ruling on the issue of standing and ordered the parties to address the issue of standing in their briefs to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Todd contends that the county court erred in the amount surcharged to Paulsen. Specifically, he contends that the county court erred (a) in finding that the Hummer had a fair market value of $13,300 when Paulsen sold it and (b) in finding that the Hummer required $4,900 in repairs and reducing its fair market value by that amount.

## IV. STANDARD OF REVIEW

[1-3] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. *In re Conservatorship of Gibilisco*, 277 Neb. 465, 763 N.W.2d 71 (2009); *In re Guardianship & Conservatorship of Cordel*, 274 Neb. 545, 741 N.W.2d 675 (2007). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. An appellate court, in reviewing a judgment of the trial court for errors appearing on the record, will not substitute its factual findings for those of the trial court where competent evidence supports those findings. *In re Guardianship of Gaube*, 14 Neb. App. 259, 707 N.W.2d 16 (2005).

## V. ANALYSIS

### 1. Jurisdiction

[4,5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Carlos H. v. Lindsay M.*, 283 Neb. 1004, 815 N.W.2d 168 (2012). Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law. *Id*. In this case, there is a question of whether Todd had the capacity to bring the instant appeal.

[6-10] Initially, it is important to set forth the difference between standing and capacity to sue. Although the concepts

of standing and capacity to sue are related, they are distinct: Capacity to sue is the right to come into court, whereas standing to sue is the right to relief in court. See *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 132 Cal. Rptr. 3d 276 (2011). Standing relates to a court's power, that is, jurisdiction, to address issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.*, 281 Neb. 992, 801 N.W.2d 253 (2011). Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. *In re Application A-18503*, 286 Neb. 611, 838 N.W.2d 242 (2013); *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res., supra*. The focus is on the party, not the claim itself. *Id*. Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf. *Id*. The defect of standing is a defect of subject matter jurisdiction. *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013); *State ex rel. Reed v. State*, 278 Neb. 564, 773 N.W.2d 349 (2009). Thus, the issue of standing is jurisdictional; a party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding. *In re Application A-18503, supra*; *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res., supra*.

[11] In contrast, the capacity to sue is the right to come into court. A party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy. *Carlos H. v. Lindsay M., supra*. The "'legal capacity to sue or be sued'" generally refers to the status of the party. *A Plus Janitorial Co. v. Group Fox, Inc.*, ___ Ill. App. 3d ___, ___, 988 N.E.2d 178, 182, 370 Ill. Dec. 402, 406 (2013). Examples of lack of capacity include infancy and mental incompetency. See *Carlos H. v. Lindsay M., supra* (minor lacks capacity to bring action); *Dafoe v. Dafoe*, 160 Neb. 145, 69 N.W.2d 700 (1955) (denying son right to bring lawsuit as "next friend" of his father where evidence presented did not

sustain conclusion that father was mentally incompetent to bring lawsuit in his own behalf).

[12,13] Under Nebraska's pleading rules, a party wishing to raise the issue of whether another party has the necessary capacity must specifically deny that the opposing party has capacity. *Carlos H. v. Lindsay M.*, 283 Neb. 1004, 815 N.W.2d 168 (2012); Neb. Ct. R. Pldg. § 6-1109(a) (rev. 2008). Thus, unlike standing, a party's capacity to sue or be sued is not jurisdictional. See *Carlos H. v. Lindsay M., supra*. Because a lack of legal capacity is a legal disability that can be cured during the pendency of the litigation, *Washington Mut. Bank v. Blechman*, 157 Cal. App. 4th 662, 69 Cal. Rptr. 3d 87 (2007), it follows that a plaintiff's capacity to sue may also be lost subsequent to the filing of a complaint. See *Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308 (Iowa 1982) (it is proper to challenge plaintiff's capacity to sue by motion to dismiss based on facts that occurred subsequent to filing of petition); *Dumbaugh v. Cascade Mfg. Co.*, 264 N.W.2d 763 (Iowa 1978) (plaintiff, trustee in bankruptcy, had capacity to sue when suit was commenced; however, he lost capacity during pendency of case when he was discharged as trustee and bankruptcy estate was closed).

Having set forth the distinctions between standing and capacity to sue, we now consider their application to the instant case.

### (a) Standing

[14] It is clear that Todd had standing at the inception of the instant case in February 2012, when the application for an accounting was filed, because he brought the action as the original guardian. See Neb. Rev. Stat. § 30-2628(2) (Cum. Supp. 2012) ("[w]ithout regard to custodial rights of the ward's person, a guardian shall take reasonable care of his or her ward's clothing, furniture, vehicles, and other personal effects and commence protective proceedings if other property of his or her ward is in need of protection"). The issue of whether a plaintiff lost standing during a proceeding, even though he initially had standing, was considered, and rejected, by the Nebraska Supreme Court in *Myers v.*

*Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006). In rejecting the notion that standing had been lost, the court set forth that a plaintiff's personal interest "'is to be assessed under the rubric of standing at the commencement of the case, and under the rubric of mootness thereafter.'" *Id.* at 682-83, 724 N.W.2d at 792.

Pursuant to *Myers v. Nebraska Invest. Council, supra*, because standing is determined at the commencement of the litigation, Todd, as the original guardian, clearly had standing at the time that he filed the application for complete accounting, surcharge, and indemnification in the county court, which was the commencement of litigation in this case.

[15,16] Furthermore, the issues presented in the application for accounting and raised in this appeal have not become moot. A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013); *Muzzey v. Ragone*, 20 Neb. App. 669, 831 N.W.2d 38 (2013). A case is not moot unless a court cannot fashion some meaningful form of relief, even if that relief only partially redresses the prevailing party's grievances. *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009). Clearly, the issues presented regarding the county court's determination surcharging Paulsen are still alive, some meaningful relief could be fashioned, and this case is not subject to dismissal for mootness.

### (b) Capacity

[17,18] Having determined that Todd had standing at the inception of this action and that he did not lose standing, we proceed to consider whether he had the capacity to sue and to bring this appeal. Todd's failure to file an acceptance of his appointment as conservator was brought to this court's attention by Paulsen in a motion for summary dismissal, although

the issue was couched under the rubric of "standing" rather than "capacity to sue." However, because a party's capacity to sue or be sued is not jurisdictional, a challenge to a party's capacity must be brought at the earliest opportunity or it is waived. See *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1390, 132 Cal. Rptr. 3d 276, 282 (2011) ("[a] challenge to a party's capacity must be brought at the earliest opportunity or the challenge is forfeited"). After resigning as Herrick's guardian, Todd, purportedly acting in his capacity as successor conservator, filed a motion in the county court to alter or amend. Although Todd had not filed an acceptance of his appointment of successor conservator at the time this motion was filed, we are unable to discern, due to the lack of a bill of exceptions from the hearing on Todd's motion to alter or amend, whether Paulsen challenged Todd's authority to act in that capacity at that time. Because under Nebraska's pleading rules a party who wishes to raise the issue of whether another party has the necessary capacity must specifically deny that the opposing party has capacity, *Carlos H. v. Lindsay M.*, 283 Neb. 1004, 815 N.W.2d 168 (2012), it follows that the party seeking to raise the issue that a party has lost capacity during the course of litigation bears the burden of establishing that the party raised such issue at the first opportunity, thereby properly preserving it. Because Paulsen cannot establish that she challenged Todd's authority at the earliest opportunity, i.e., before the county court at the hearing on Todd's motion to alter or amend, and because standing to sue is not jurisdictional, she has waived any objection to his lack of capacity. Therefore, we proceed to address the merits of this appeal as raised in Todd's assignments of error.

## 2. Merits of Appeal

Having determined that Todd has standing to pursue this appeal and that Paulsen waived any objections to Todd's capacity to sue, we proceed to consider the errors assigned by Todd. Todd contends that the county court erred in the amount surcharged to Paulsen. Specifically, he contends that the county court erred (a) in finding that the Hummer had a

fair market value of $13,300 when Paulsen sold it and (b) in finding that the Hummer required $4,900 in repairs and reducing its fair market value by that amount.

### (a) Hummer's Fair Market Value

Todd contends that the value assigned to the Hummer by the county court was not supported by competent evidence, because although credible evidence was offered at trial that the fair market value of the Hummer was between $16,000 and $17,000 at the time Paulsen sold it, the court determined that the fair market value of the Hummer was $13,300 at the time of its July 1, 2011, sale to Brake.

The evidence established that on the June 6, 2011, inventory/accounting, Paulsen valued the Hummer at $16,700, but her trial testimony placed the Hummer's value between $9,000 and $10,000, based upon Internet research she conducted on the "cars.com" and Kelley Blue Book Web sites. Todd presented evidence that in April 2012, a 2007 Hummer in average condition with around 63,705 miles would sell at auction for an average sale price of $17,188.

An appellate court, in reviewing a judgment of the trial court for errors appearing on the record, will not substitute its factual findings for those of the trial court where competent evidence supports those findings. *In re Guardianship of Gaube*, 14 Neb. App. 259, 707 N.W.2d 16 (2005).

The county court heard the evidence and determined that the fair market value of Herrick's Hummer was $13,300. This amount is between the fair market value of the Hummer which was listed by Paulsen in her inventory at $16,700 and her trial testimony which placed the Hummer's value between $9,000 and $10,000. The county court's determination is supported by competent evidence and is neither arbitrary, capricious, nor unreasonable. As such, we accept the factual finding of the county court on this issue.

[19] We further note that Todd argues in his brief that the county court abused its discretion in failing to receive into evidence a printout from the Kelley Blue Book Web site showing the private party value of a 2007 Hummer H3 with 56,870 miles. However, Todd did not assign this as error. Errors

argued but not assigned will not be considered on appeal. *Butler County Dairy v. Butler County*, 285 Neb. 408, 827 N.W.2d 267 (2013).

### (b) Repairs

Todd contends that the county court erred in finding that the Hummer required $4,900 in repairs and reducing its fair market value by that amount. He argues that Paulsen should have been surcharged this amount, because she breached her duty as conservator to comply with the "prudent investor rule" by failing to verify facts relevant to the repair of the Hummer, and that this breach resulted in the $4,900 diminishment of Herrick's estate.

Pursuant to Neb. Rev. Stat. § 30-2646 (Reissue 2008), a conservator is to act as a fiduciary and comply with the prudent investor rule set forth in Neb. Rev. Stat. §§ 30-3883 to 30-3889 (Reissue 2008). The prudent investor rule mandates that a conservator who is a fiduciary shall exercise reasonable care, skill, and caution in managing estate assets. § 30-3884(a). The prudent investor rule also requires a conservator to "make a reasonable effort to verify facts relevant to the investment and management of trust assets." § 30-3884(d). Compliance with the prudent investor rule is determined in light of the facts and circumstances at the time of the conservator's decision or action and not by hindsight. See § 30-3887.

Todd contends that Paulsen failed to make a reasonable effort to determine whether the Hummer's engine problems were covered by the warranty. Although the record is undisputed that Paulsen did not take the Hummer to a General Motors dealership to determine if the Hummer's engine problems were covered by the warranty, the evidence did establish that William researched the warranty issue and that he and Paulsen determined the Hummer's engine issues would not have been covered by the warranty. Paulsen then took the vehicle to an independent mechanic and obtained an estimate of the cost to repair the vehicle, which estimate was $4,900. She then chose to sell the Hummer and discount the price by the $4,900 in necessary repairs. The county court determined that the value of the necessary repairs should be subtracted

from the fair market value of the vehicle. The county court's determination is supported by competent evidence and is neither arbitrary, capricious, nor unreasonable. As such, we accept the factual finding of the county court on this issue.

## VI. CONCLUSION

Having determined that we have jurisdiction over this appeal, we find that the decision of the county court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. As a result, the decision of the county court is affirmed.

AFFIRMED.

---

DONALD L. BRITTAIN, APPELLANT, V. H & H
CHEVROLET LLC AND MID-CENTURY
INSURANCE COMPANY, APPELLEES.

___ N.W.2d ___

Filed April 29, 2014.    No. A-13-384.

1. **Workers' Compensation: Appeal and Error.** In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, a higher appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.
2. **Workers' Compensation: Judgments: Appeal and Error.** Where there is no factual dispute, the question of whether the injury arose out of and in the course of employment is clearly one of law, in connection with which a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts.
3. **Employer and Employee.** An activity is related to the employment if it carries out the employer's purposes or advances its interests directly or indirectly.
4. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the controversy before it.

Appeal from the Workers' Compensation Court: DANIEL R. FRIDRICH, Judge. Affirmed.

Joseph W. Grant and Michael R. Peterson, of Hotz, Weaver, Flood, Breitkreutz & Grant, for appellant.

Stacy L. Morris, of Lamson, Dugan & Murray, L.L.P., for appellees.